NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

_____

No. 09-4427
_____

UNITED STATES OF AMERICA

v.

MICHAEL A. POWELL,
                    Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No.1-08-cr-00592-001)
District Judge:  Hon. Joseph H. Rodriguez
_____

Submitted Under Third Circuit LAR 34.1(a)
September 12, 2011

Before:  SLOVITER, SCIRICA, and SMITH, *Circuit Judges*

(Filed: September 13, 2011)

_____

OPINION
_____

SLOVITER, *Circuit Judge.*

Michael Powell was convicted by a jury of two counts of bank robbery and two counts of carrying a firearm in connection with a crime of violence in violation of 18 U.S.C. § 2113(a) and (d) and 18 U.S.C. § 924(c), respectively.  Powell asks this court to vacate his conviction and remand for a new trial.  In the alternative, he challenges the reasonableness of his sentence.  We will affirm.[1]

## I.

On April 30, 2008, a PNC Bank in Glendora, New Jersey was robbed by a man armed with a gun.  On July 2, 2008, two men armed with guns robbed the same bank. Although the employees were not able to identify the perpetrators because the men wore disguises, they believed that one of the men was involved in both robberies based on his appearance, voice, demeanor, and actions.

Law enforcement agents, including Federal Bureau of Investigation ("FBI") Special Agent Mark Gillen, conducted an investigation that led to the arrest of Powell as the suspect in the two robberies.  The evidence collected included, inter alia, incriminating statements made by Powell to his friend Everett McKinney (who was cooperating with the FBI), video surveillance and cell phone records that placed Powell near the PNC Bank on April 30, a text message sent from Powell's phone on July 1 stating he was "trying to get some money," supp. app. at 200, the fact that Powell borrowed a white, compact Chevrolet from his ex-girlfriend Kristina Fleming on July 2

[1] The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

2

(the same type of car a witness who lived near the bank saw the robbers drive away in), and Powell's unexplained wealth. The FBI was also aware that Powell previously pled guilty to three counts of armed bank robbery for which he was then serving a term of supervised release, and that his height, build, and skin-tone appeared to be consistent with those characteristics of the robber.

On August 13, 2008, FBI agents executed a search and arrest warrant at Powell's apartment. While being handcuffed, one of the agents asked Powell if he had any weapons in the apartment to which he responded "yes, there is a loaded gun in the hallway closet." Presentence Investigation Report ("PSR") ¶ 33. In addition to the loaded firearm, agents recovered two diamond lined "Joe Rodeo" watches among other jewelry, a pair of black pants with a white label on the rear pocket, and a pair of gold-rimmed sunglasses. The gun, pants, and sunglasses resembled those seen in the video surveillance footage of the robberies.

In 2009, a grand jury returned a four-count superseding indictment charging Powell with two counts of bank robbery under 18 U.S.C. § 2113(a) and (d) and two counts of carrying a firearm in connection with a crime of violence under 18 U.S.C. § 924(c). After a five-day trial, the jury returned a verdict of guilty on all counts. Powell subsequently appeared for sentencing. After hearing from the parties, the District Court imposed concurrent sentences of 78 months imprisonment on the bank robbery convictions, a consecutive term of 84 months on the first firearm conviction, and a consecutive term of 300 months on the second firearm conviction, for a total of 462 months (38.5 years).

Powell appeals.

## II.

Powell argues that several errors at trial rendered the proceedings unfair. The majority of Powell's claims have been raised for the first time on appeal and will be reviewed for plain error. Fed. R. Crim. P. 52(b) ("[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention").[2] To the extent the arguments were raised before the District Court, the appropriate standard of review will be addressed herein.

First, Powell argues that the District Court erred by granting a prospective juror's request to be excused from jury service due to a hearing impairment. This argument lacks merit. As the Government points out, Powell subsequently excused for cause another prospective juror who disclosed a similar hearing impairment. The District Court committed no error, let alone plain error. *See* 28 U.S.C. § 1865(b)(4) (authorizes district judge to exclude a juror who "is incapable, by reason of mental or physical infirmity, to render satisfactory jury service").

Second, Powell claims that the District Court committed numerous errors with respect to evidentiary admissions at trial.

To begin, Powell argues that the District Court erred by denying his motion to suppress his statement made during his arrest directing the arresting officers to the

---

[2] Under this standard we must find: (1) an error was committed; (2) the error was plain; and (3) the error affected the defendant's substantial rights. *United States v. Knight*, 266 F.3d 203, 206 (3d Cir. 2001).

4

location of his firearm.[3]  We agree with the Government, and the District Court, that the "public safety" exception to the *Miranda* rule, recognized in *New York v. Quarles*, 467 U.S. 649, 659 (1984), applies in this case.  Even though the officers had control over Powell and no members of the public were present in Powell's apartment, the officers were aware that Powell had prior felony convictions involving use of a weapon and that he was suspected of involvement in armed robbery.  *See, e.g.*, *United States v. Are*, 590 F.3d 499, 505-06 (7th Cir. 2009) (held public safety exception applies where officers had prior knowledge of suspect's involvement with firearms).

Powell also argues that the District Court should have *sua sponte* suppressed his cell phone records obtained from his wireless carrier under 18 U.S.C. § 2703(d).  He claims that the Government failed to comply with the requirements of § 2703(d) that requires the Government to provide "specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation."  The Stored Communications Act, 18 U.S.C. § 2701 *et seq.* (providing under § 2703(c)(1)(B) that the Government may require a service provider to disclose records pursuant to a § 2703(d) order), affords no suppression remedy for non-constitutional violations.  *See* 18 U.S.C. § 2708.  *See also United States v. Clenney*, 631

_____

[3] Because Powell had raised this argument at the suppression hearing, we review the District Court's factual findings for clear error, and exercise plenary review of the Court's application of the law to those facts.  *United States v. Riddick*, 156 F.3d 505, 509 (3d Cir. 1998).

F.3d 658, 667 (4th Cir. 2011) (there is no exclusionary rule generally applicable to statutory violations). Accordingly, even if Powell had shown a violation of the statute, exclusion would not be the appropriate remedy.

The Government's failure to produce its § 2703(d) applications before trial is of no moment. The Government had no duty to disclose the applications during discovery because the information therein is in no way favorable to Powell or material to either guilt or punishment. *See United States v. Bagley*, 473 U.S. 667, 676 (1985). If Powell believed that the applications were material to his defense, he could have sought an order compelling their production before trial. *See* Fed R. Crim. P. 16.[4]

Relatedly, Powell argues that a new trial is warranted because the Government's expert witness on cell site location data, FBI Agent William Shute, testified to matters beyond the scope of the Government's Rule 16 disclosure. Powell has not demonstrated how the verdict would have been different if he had received a more complete disclosure under Fed. R. Crim. P. 16(a)(1)(G) and, as a result, has failed to establish prejudice required for reversal. Moreover, defense counsel undermined Shute's conclusions

---

[4] In any case, the Government's applications meet the § 2703(d) standard, which is "a lesser one than probable cause." *In re Application*, 620 F.3d 304, 313 (3d Cir. 2010). The Government stated specific facts in its applications that provided a basis for believing that Powell was a suspect and that cell phone records were relevant to solving the case. *See* App. at 24-29, 33-39.

through its vigorous cross-examination of his methods and presentation of a rebuttal expert witness.[5]

Powell also takes issue with the testimony of Agent Gillen. Agent Gillen did not provide inadmissible hearsay. To the extent that Agent Gillen violated Fed. R. Evid. 701(b)'s helpfulness requirement by drawing inferences that the jury was equally capable of drawing (e.g. his testimony that the gun and pants are similar to those seen in the video), Powell has provided no persuasive argument how this affected the outcome.[6]

In addition, Powell argues that the District Court abused its discretion by allowing extensive testimony by the female victims of the robberies as to the effect of the robberies on their ongoing health and mental state. Although Powell acknowledges that evidence of intimidation is relevant in bank robbery prosecutions, he argues that introduction of the evidence in this case warrants a new trial because he conceded that display of a weapon would suffice to prove the intimidation element. As the Government counters, Powell did not make a formal stipulation. Moreover, we disagree with Powell's

---

[5] We reject Powell's additional arguments regarding Agent Shute's testimony. Contrary to Powell's contention, the Government's letter, provided to defense counsel prior to trial in response to the District Court's order, appears in the supplemental appendix at page 871. In addition, Powell cannot complain on appeal that Agent Shute violated the hearsay prohibition inasmuch as defense counsel elicited the complained of testimony on cross-examination. *See United States v. Console*, 13 F.3d 641, 660 (3d Cir. 1993) (invited error cannot be a basis for reversal).

[6] We further reject Powell's new argument that the Government violated its discovery obligations by eliciting surprise expert testimony when Agent Gillen testified as to the meaning of slang terminology contained in a text message sent from Powell's cell. Powell has provided no authority for his assertion that testimony regarding the meaning of the word "stack" constitutes expert testimony and has provided no explanation for how this testimony prejudiced him in any way.

7

characterization of the victims' testimony on this point as "extensive." Appellant's Br. at 29. The testimony regarding the effect of the robbery is insignificant when considered against the backdrop of hundreds of pages of testimony.

Powell further argues that the Government elicited inadmissible propensity evidence through McKinney without affording proper pre-trial notice.[7] The Government claims that it did not expect McKinney to provide this answer, so we cannot fault it for not providing advance notice. Powell also argues that this testimony regarding his prior bad acts was not relevant and, even if relevant, was unfairly prejudicial. The testimony was relevant because it provided necessary background distinct from propensity evidence in that it explained McKinney's motive for testifying (i.e. he was concerned about violating his probation by having contact with a known felon). With respect to unfair prejudice, where a defendant has failed to object on the basis of Fed. R. Evid. 403, this court will "seldom find plain error." *United States v. Gatto*, 995 F.2d 449, 457 (3d Cir. 1993).

Additionally, Powell argues that the District Court should have granted a mistrial when a Government witness refused to answer cross-examination questions that might disclose where she lived. The Court committed no such error. Defense counsel agreed to the District Court's proposed solution to excuse the witness and strike her testimony. Powell has provided no persuasive reason to reverse course now.

---

[7] When asked whether there were any conversations that he had with Powell that caused him concern that he reported to his probation officer, McKinney testified "[Powell] mentioned he was robbing drug dealers in Philadelphia," and he was "[l]ooking at some banks." Supp. App. at 269.

Next, Powell argues that the Government engaged in prosecutorial misconduct during its opening statement and summation by impermissibly expressing its personal opinion and appealing to the jury's emotions. Because the prosecutor only referred to evidence that the Government expected to (and properly did) introduce at trial, there was no prejudice.

Finally, Powell argues that the District Court coerced a verdict through its supplemental communications with the jury during deliberations. We have considered Powell's arguments and find nothing in the record to support his claim of coercion.

Because we conclude there was no evidentiary or instructional error or prosecutorial misconduct, Powell's cumulative error claim also fails. The cumulative effect of each non-error does not rise to constitutional error; as the saying goes, zero plus zero equals zero.

### III.

In the alternative, Powell challenges his sentence as substantively unreasonable.[8] Powell argues that the District Court should have "temper[ed] the statutory severity of the [§ 924(c)] counts [that combined carry a mandatory minimum of 32 years]" by imposing sentences of only one day imprisonment for each of the bank robbery counts. Appellant's Br. at 48. The District Court properly refused to give any weight to the severity of the statutory minimum sentences for the § 924(c) counts when determining

---

[8] A defendant challenging his sentence bears the burden of showing that his sentence is unreasonable. *United States v. King*, 454 F.3d 187, 194 (3d Cir. 2006). We apply an abuse of discretion standard, *Rita v. United States*, 551 U.S. 338, 350-51 (2007), but we accord great deference to the District Court's choice of final sentence, *United States v. Lessner*, 498 F.3d 185, 204 (3d Cir. 2007).

the sentence for the bank robbery counts. *See, e.g.*, *United States v. Williams*, 599 F.3d 831, 834 (8th Cir. 2010) (held district court may not use presence of 924(c) add-on to reduce a defendant's sentence for underlying crime); *United States v. Chavez*, 549 F.3d 119, 135 (2d Cir. 2008) (same); *United States v. Roberson*, 474 F.3d 432, 436 (7th Cir. 2007) (same).

In any event, we are satisfied that the District Court adequately considered the applicable § 3553(a) factors when it declined to grant Powell's request for a downward variance and imposed a bottom-of-the-range sentence of 462 months imprisonment. *See United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (en banc) (we will affirm sentence "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided").

**IV.**

Based on the foregoing, we will affirm the District Court's judgment of conviction and sentence.