FILED
United States Court of Appeals
Tenth Circuit

June 30, 2014

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JOSHUA BODEAN SMITH,

    Defendant-Appellant.

No. 13-1112

---

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:10-CR-00612-CMA-1)**

---

O. Dean Sanderford, Assistant Federal Public Defender (Warren R. Williamson, former Interim Federal Public Defender, with him on the briefs), Denver, Colorado, for Defendant-Appellant.

J. Bishop Grewell, Assistant United States Attorney (John F. Walsh, United States Attorney, with him on the brief), Denver, Colorado, for Plaintiff-Appellee.

---

Before **LUCERO**, **GORSUCH**, and **HOLMES**, Circuit Judges.

---

**GORSUCH**, Circuit Judge.

---

    Must a sentencing court studiously ignore one of the most conspicuous facts about a defendant when deciding how long he should spend in prison? After a court sentences a man to many decades in prison for using a gun during a crime

of violence, must the court pretend the gun sentence doesn't exist when weighing an appropriate prison term for the underlying crime of violence?

That's the blinkered view the government persuaded the district court to adopt in this case. No one doubts that Joshua Smith deserves a long prison sentence. He robbed two stores and shot the managers in both. For his conduct he stands convicted of two counts of robbery (18 U.S.C. § 1951) and two counts of using a gun "during and in relation to" those "crime[s] of violence" (18 U.S.C. § 924(c)). At sentencing, the district court began by recognizing that § 924(c) mandated a 35-year prison term for Mr. Smith's gun use during the robberies. Turning then to the task of fixing a sentence for the robberies themselves, the court acknowledged any robbery sentence had to run consecutively to, not concurrently with, the mandatory gun sentence. Still, the question remained how long Mr. Smith's robbery sentence should be. How much more prison time beyond about 2045 — when Mr. Smith will be 55 years old and otherwise eligible for release — might be necessary and just. Normally, of course, a district court enjoys considerable discretion when it comes to picking a prison term within the applicable statutory range. But at the government's urging in this case the district court decided there was one set of facts it had to disregard — Mr. Smith's § 924(c) gun convictions and the lengthy sentence it just issued for them.

2

When it comes to those facts alone the government argued and the district court held a sentencing judge must remain willfully blind. According to the government, a sentencing judge is powerless to reduce by a year, a month, or a day the prison time it issues for an underlying crime of violence in light of a simultaneously issued § 924(c) gun sentence. A judge can't so much as consider the fact a § 924(c) conviction and sentence exist. Even if the § 924(c) conviction and sentence guarantee the defendant a prison term of many decades. Even if the § 924(c) prison term is certain to outlast the defendant's life and the lives of every person now walking the planet — itself no fanciful possibility. *See, e.g.*, *Deal v. United States*, 508 U.S. 129 (1993); *United States v. Angelos*, 345 F. Supp. 2d 1227, 1260-61 (D. Utah 2004), *aff'd*, 433 F.3d 738 (10th Cir. 2006). On the government's view, a district court must always and categorically disregard the sentence it has just pronounced for a § 924(c) gun conviction when turning to consider an appropriate sentence for the underlying and intimately related crime of violence. Such a rule may not test the limits of the human capacity for self-deception. But if allowed to stand it would transform the act of sentencing in these cases from a searching and fact-sensitive inquiry aimed at finding a fitting punishment into an enterprise built on a fiction, even a suspension of disbelief.

We are convinced the law doesn't require so much from sentencing courts. Neither should the perfidiousness of a defendant's conduct be allowed to obscure (or perhaps warp) the law's teachings on this score. Viewed with a cold eye, the

3

relevant statutes permit a sentencing court to consider a defendant's § 924(c) conviction and sentence just as they permit a sentencing court to consider most any other salient fact about a defendant. To say this much isn't to suggest a sentencing court *must* reduce a defendant's related crime of violence sentence in light of his mandatory gun enhancement sentence under § 924(c). Only that the court is not *required* to feign the sort of ignorance the government demands.

\*

We begin with 18 U.S.C. § 3661. "No limitation," says the statute, may be placed on a court's power to consider information about a defendant's "background, character, and conduct" when seeking to fashion an appropriate sentence. *Id.* As the Supreme Court has explained, this provision ensures sentencing judges access to "the widest possible breadth of information about a defendant" so that the punishments they issue "suit not merely the offense but the individual." *Pepper v. United States*, 131 S. Ct. 1229, 1240 (2011) (quoting *Wasman v. United States*, 468 U.S. 559, 564 (1984)); *see also Williams v. New York*, 337 U.S. 241, 247 (1949) ("[T]he punishment should fit the offender and not merely the crime."). In this way, the statute preserves a long tradition, one extending back "before . . . the American colonies became a nation," a tradition of affording judges "discretion in the sources and types of evidence" they may consult at sentencing, subject of course and always to the Constitution's constraints. *Pepper*, 131 S. Ct. at 1240 (quoting *Williams*, 337 U.S. at 246).

4

The government's theory in this appeal sits uncomfortably with § 3661, the Supreme Court's interpretation of it, and the historical practice it embodies. Rather than ensure a sentence predicated on a full view of the defendant, the government asks us to bar sentencing courts from considering an entire category of information about him. This despite the fact the Supreme Court has warned that placing such "categorical bar[s]" on the information available to sentencing courts risks "directly contraven[ing] Congress'[s] expressed intent in § 3661." *Pepper*, 131 S. Ct. at 1242. Despite the Court's declaration that § 3661's "broad language" does not provide "any basis for the courts to invent a blanket prohibition against considering certain types of evidence at sentencing." *United States v. Watts*, 519 U.S. 148, 152 (1997) (per curiam). And despite the fact the Court has rejected proposal after proposal seeking to impose non-constitutional limits on the information a court may consider at sentencing. *See, e.g.*, *Williams v. Oklahoma*, 358 U.S. 576, 584-86 (1959) (rejecting categorical bar against considering conduct related to one count of conviction when sentencing for an independent count of conviction); *Nichols v. United States*, 511 U.S. 738, 746-49 (1994) (defendant's prior convictions); *Witte v. United States*, 515 U.S. 389, 397-401 (1995) (conduct for which the defendant may later be prosecuted and convicted); *Pepper*, 131 S. Ct. at 1241-43 (post-conviction rehabilitation efforts).

The government's theory in this appeal sits uneasily, too, with the even more specific guidance the Supreme Court has provided about § 3661's

5

application in the § 924(c) context.  In *United States v. Watts*, the Court read § 3661 to permit a sentencing court to find by a preponderance of the evidence that the defendant engaged in the conduct alleged in a § 924(c) charge — even though he was *acquitted* on that charge — and then use that finding to enhance his sentence for the underlying crime of violence.  519 U.S. at 156-57.  And given that, one might well ask this:  How can it be that § 3661 authorizes a sentencing court to consider facts related to a defendant's § 924(c) *acquittal* when fashioning a sentence for the underlying crime of violence but not facts related to his § 924(c) *conviction and sentence*?

If anything, the case for applying § 3661 would seem a good deal more compelling here than there.  After all, even if § 3661 allows the practice in *Watts* one could debate whether the Constitution prohibits it, forbidding courts (at least usually) from imposing greater punishments that depend on facts neither admitted by the defendant nor found by a jury.  *See Alleyne v. United States*, 133 S. Ct. 2151, 2160-63 (2013); *Rita v. United States*, 551 U.S. 338, 373 (2007) (Scalia, J., concurring in part and concurring in the judgment).  Meanwhile, no one has identified any constitutional imperative that might prevent sentencing courts from applying § 3661 to reduce crime of violence sentences in light of simultaneously issued § 924(c) sentences.  For that matter, in its briefs to this court the government doesn't even mention § 3661 or any of the Supreme Court's guidance about its scope or the tradition it codifies.

\*

Still, that's just the beginning of the government's troubles. While § 3661 explains what a district court *may* consider at sentencing, 18 U.S.C. § 3553(a) describes what a district court *must* consider when sentencing for crimes that lack a mandatory sentence prescribed by statute — crimes like Mr. Smith's underlying § 1951 robbery convictions. In what's often called its parsimony principle, § 3553(a) directs courts to "impose a sentence sufficient, but not greater than necessary, to comply" with several (admittedly incommensurate) policy goals. Goals including a just punishment, adequate deterrence, and protection of the public. And here again it is difficult to reconcile the government's insistence that district courts must categorically ignore § 924(c) convictions and sentences with this statute's demands.

Consider just one of the policy goals the statute says a district court must consider, § 3553(a)(2)(C)'s concern with protecting the public. Surely a rational district court could find that the length of the public's guaranteed protection from a defendant thanks to a mandatory § 924(c) sentence informs its analysis of the public's unmet need for further protection when it comes to sentencing the defendant for his related crime of violence. After all, the marginal benefit for public protection may appear quite different when a defendant is 23 years of age — as Mr. Smith is now — and only recently removed from criminal conduct compared to when he is 55 years old and 35 years removed from his last criminal

7

act — as Mr. Smith will be, approximately, when his mandatory § 924(c) sentences end. *Cf.* Miles D. Harer, Fed. Bureau of Prisons, *Recidivism Among Federal Prisoners Released in 1987*, at 3, 12 (1994) (reporting recidivism rates "inversely related to age at release").

In fact, sentencing courts routinely consider facts just like these. They routinely consider the impact of a sentence already issued for one count of conviction when trying to determine the appropriate punishment under § 3553(a) for a related count of conviction.[1]  Neither does the government dispute the propriety of the practice. To the contrary, the government expressly concedes that district courts normally may find "other sentences" issued for related counts of conviction relevant when applying "§ 3553(a)'s broad categories of consideration" to ascertain an appropriate punishment for a remaining count of

---

[1] *See, e.g.*, *Pepper*, 131 S. Ct. at 1251; *Greenlaw v. United States*, 554 U.S. 237, 253-54 (2008); *United States v. Vidal-Reyes*, 562 F.3d 43, 49 n.4 (1st Cir. 2009); *United States v. Bay*, 820 F.2d 1511, 1514 (9th Cir. 1987) (a sentencing court is not required to "evaluate the gravity of each separate crime upon which a conviction was obtained, and then select a punishment that would be appropriate for each if considered independently of any other crimes."); *cf. United States v. Yeje-Cabrera*, 430 F.3d 1, 15 (1st Cir. 2005) (forfeiture order part of sentencing package); *United States v. Teel*, 691 F.3d 578, 585-86 (5th Cir. 2012) (bribery and fraud prison terms); *United States v. Flaschberger*, 408 F.3d 941, 943-44 (7th Cir. 2005) (restitution order); *United States v. Noble*, 299 F.3d 907, 910 (7th Cir. 2002) (cocaine possession and conspiracy prison terms); *United States v. Horob*, 735 F.3d 866, 871 (9th Cir. 2013) (identity theft mandatory minimum prison term); *United States v. Jefferson*, 308 F. App'x 2, 4 (7th Cir. 2009); *United States v. Hamilton*, 323 F. App'x 27, 31 (2d Cir. 2009). *See generally* 12A Beth Bates Holliday, *Cyclopedia of Federal Procedure* § 52:10 (3d ed. 2014).

conviction. Gov't Br. 29.

*

So where does that leave us? Under a longstanding American tradition embodied in § 3661 and § 3553(a), federal courts seeking a just sentence may look to the whole of the defendant's person, character, and crimes. As part of this tradition, sentencing courts may examine and consider the impact of contemporaneously issued sentences.

The government replies that two subsections lurking within § 924(c) itself undo this tradition when it comes to gun charges. But while more specific statutory terms surely can trump more general statutory guidance, neither will we lightly assume Congress intended radical change to historical sentencing practices. After all, "Congress . . . does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions — it does not, one might say, hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 468 (2001); *see also Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 602 (1980) (Rehnquist, J., dissenting) ("In a case where the construction of legislative language such as this makes so sweeping and so relatively unorthodox a change as that made here, I think judges as well as detectives may take into consideration the fact that a watchdog did not bark in the night."). A peek inside the two subsections the government asks us to inspect, moreover, reveals none of the radical change the government promises, only empty mouseholes.

9

The first subsection the government points to, 18 U.S.C. § 924(c)(1)(D)(ii), states that mandatory minimum gun sentences may not run concurrently with "any other term of imprisonment imposed on the" defendant, including any prison term imposed for the defendant's underlying crime of violence. Plainly, this language ensures that convictions on gun charges and crimes of violence run consecutively even if the district court might find justice better served by concurrent sentences. In this way, the statute clearly does alter the normal operation of § 3553's parsimony principle: consecutive sentences must be issued even if the district court thinks concurrent sentences sufficient to meet § 3553(a)'s policy objectives.

But more than this § 924(c)(1)(D)(ii) does not purport to do. It does not say that in calculating the length of a (consecutive) crime of violence sentence a district court must ignore the length of the mandatory minimum gun sentence. It does not limit the factors the court may and must consider when setting a sentence for the crime of violence. It does not increase the penalties for the underlying crime of violence. In fact, it does not say *anything* about how the underlying crime of violence must be punished, about what the "other term of imprisonment" must be. The statute leaves that task to the usual sources of sentencing law outside § 924(c), including § 3661 and § 3553. Section 924(c)(1)(D)(ii) says simply that § 924(c)'s mandatory minimums must run consecutively to "any other term of imprisonment." And that means *any* other term of imprisonment.

Our thoughtful colleague in dissent disputes none of this. Instead, he joins

10

the government in relying on a second subsection, 18 U.S.C. § 924(c)(1)(A). Our colleague insists *this* provision "unambiguous[ly]" and "plain[ly]" withdraws the district court's normal sentencing powers. Dissent at 1-2. But, respectfully, we don't see how this subsection is any more telling than the last. This subsection says simply that "in addition to the punishment provided for" the defendant's underlying offense (in Mr. Smith's case, robbery), a defendant must be sentenced to "a term of imprisonment of not less than" a certain specified number of years for his gun offense.

By its plain terms, this language ensures that a § 924(c) gun sentence is indeed a mandatory minimum sentence. This language explains that the defendant's prescribed sentence for his gun use must be at least a certain number of years ("not less than . . .") and must be joined with or added to (come "in addition to") the sentence provided for his underlying offense. In this way, the statute clarifies, too, that where courts once often thought a robbery or drug transaction involving a gun constituted a single punishable offense, now two separate statutory offenses exist to be punished. And the subsection guarantees that — whatever the defendant's sentence for his underlying offense — he will *at least* and *always* serve a certain number of years for his gun crime.

But while doing all this, the subsection says *nothing* about the quantum of punishment a defendant should receive for his underlying offense. Instead, the provision speaks of its mandatory minimum gun sentences as coming "in addition

11

to the punishment *provided*" for the underlying offense.  So it is the statute here (again) takes it as given that the proper scope of punishment for a defendant's underlying crime is "*provided*" by some other lawful source.  And, of course, it is.  In Mr. Smith's case, the robbery statute (§ 1951), combined with § 3661 and § 3553, "provide" the punishment for his crime of violence.  As we've seen, too, those statutes expressly permit a full consideration of his background and conduct, including his § 924(c) gun convictions and sentence.

Put differently, § 924(c)(1)(A) serves to ensure sentences for gun use are indeed mandatory and minimum ones.  It requires specific prison terms for using or carrying a firearm and requires those terms to be served "in addition to" — joined with, added to — *whatever* punishment is "*provided*" by other laws for a defendant's underlying offense.  As significant as all this may be, it does not go so far as to "provide" the sentence or sentencing procedure for a defendant's underlying offense.  Nothing in the subsection purports to displace traditional sentencing laws and practices with respect to *that* conviction.  There are no elephants hiding here.

\*

That the government wishes us to impress on § 924(c) a good deal more than that its text will sustain finds further confirmation from a statutory cousin.  In the identity theft context Congress has altered traditional sentencing practices in the very way the government now wishes us to alter them in the gun use

12

context.  Congress has acted in the identity theft context plainly and unmistakably.  All this strongly suggests that the first branch knows exactly how to alter traditional sentencing practices when it wishes, that when it does so it does so in ways and places clear enough for all to see — and that it has done nothing of the kind in § 924(c).

Just as § 924(c) makes it a crime to use firearms "during and in relation to" crimes of violence, 18 U.S.C. § 1028A criminalizes identity theft "during and in relation to" certain enumerated felonies.  Like § 924(c)(1)(A), § 1028A(a) specifies that the penalties for the crime it creates come "in addition to the punishment provided for" the underlying offense.  And like subsection (c)(1)(D)(ii) of § 924, subsection (b)(2) of § 1028A provides that certain mandatory minimum prison terms for identity theft must run consecutively to any other term of imprisonment for the underlying felony conviction.  Many courts have recognized the generally parallel construction of these statutes.  *See, e.g.*, *Vidal-Reyes*, 562 F.3d at 51-52; *United States v. Magassouba*, 619 F.3d 202, 206 (2d Cir. 2010); *United States v. Jenkins-Watts*, 574 F.3d 950, 970 (8th Cir. 2009). *See generally* Molly Booth, Comment, *Sentencing Discretion at Gunpoint:  How To Think About Convictions Underlying § 924(c) Mandatory Minimums*, 77 U. Chi. L. Rev. 1739, 1746-48 (2010).

But after subsection (b)(2), § 1028A veers off in a different direction, adding something new and telling in subsection (b)(3).  There the statute provides

13

that

> in determining any term of imprisonment to be imposed for the
> felony during which the [identity theft occurred], a court shall not in
> any way reduce the term to be imposed for such crime so as to
> compensate for, or otherwise take into account, any separate term of
> imprisonment imposed or to be imposed for a violation of this
> section[.]

By its plain terms, this language prohibits a district court from considering any sentence imposed under § 1028A when sentencing the defendant for his underlying felony.

Here, then, is *exactly* the language the government wants to read into § 924(c). It is clear and unqualified. Proof that Congress knows exactly how to strip district courts of their traditional sentencing discretion when it wishes to do so. Further proof too that § 924(c) lacks any such command. After all, it is axiomatic that such notable linguistic differences in two otherwise similar statutes are normally presumed to convey differences in meaning. *See, e.g.*, *United States v. Ressam*, 553 U.S. 272, 277 (2008) (comparing § 924(c) and another similar statute, 18 U.S.C. § 844(h)); *N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 530 (1982) ("[A]lthough two statutes may be similar in language and objective, we must not fail to give effect to the differences between them."). And here the difference in language is unmistakable. So much so that if we adopted the government's reading of § 924(c) as imposing a categorical bar on considering mandatory gun prison terms when sentencing for underlying crimes, we'd surely

14

have to read the virtually identical language of § 1028A in parallel fashion — and in this way render subsection (b)(3) superfluous, itself always a disfavored result in the business of statutory interpretation. *See, e.g.*, *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001).[2]

Neither does the government's response help its cause. The government doesn't dispute that § 1028A parallels § 924(c) in many ways. It doesn't dispute that the differences between these two similar statutes suggest differences in meaning. It doesn't dispute that its reading of § 924(c) would, by parallel application in § 1028A, render § 1028A(b)(3) superfluous. Instead the government observes that § 1028A was passed in 2004, many years after § 924(c), and from this the government surmises that § 1028A(b)(3) was "likely drafted in response to earlier attempts by defendants in the § 924(c) context to do what [Mr.] Smith is doing here." Gov't Br. 29. But the government's musings here are

---

[2] Underscoring the point is how courts have interpreted § 1028A(b)(3). At least two circuits have held that subsection (b)(3)'s language does *only* what it says — preventing a sentencing court from taking account of § 1028A's mandatory minimums when considering a sentence for predicate offenses, but permitting sentencing courts to consider § 1028A mandatory minimums when sentencing for *other* convictions that don't qualify as predicate offenses. *Vidal-Reyes*, 562 F.3d at 56; *United States v. Wahid*, 614 F.3d 1009, 1013-14 (9th Cir. 2010). In reaching this conclusion, these courts have expressly rejected the government's argument, which it ventures again here, that the statute's "consecutive sentence requirement" effectively forbids sentencing judges from considering the length of the mandatory minimum when determining the term of imprisonment for all accompanying counts of conviction. *See Vidal-Reyes*, 562 F.3d at 52-53.

15

no more than that: the government nowhere seeks to document its guesswork about Congress's imagined collective purpose. And even if the government could document its guesswork, it would hardly help its cause. Even supposing Congress intended § 1028A(b)(3) to say what it believed § 924(c) meant to say all along, that would serve only to prove that Congress itself realizes § 924(c)'s words do not prevent sentencing judges from considering mandatory minimum sentences. It would highlight, too, the fact that Congress has been on notice of this issue for many years and declined to modify § 924(c) even as it has chosen to adopt § 1028A(b)(3) and amend § 924(c) in various other ways. *See* Act of Oct. 6, 2006, Pub. L. No. 109-304, § 17(d)(3), 120 Stat. 1485, 1707 (2006); Act of Oct. 26, 2005, Pub. L. No. 109-92, § 6(b), 119 Stat. 2095, 2102 (2005); *cf. Ressam*, 553 U.S. at 277 ("While it is possible that this omission was inadvertent, that possibility seems remote given the stark difference that was thereby introduced into the otherwise similar texts . . . ."). In any event, we are of course bound by the language Congress actually employed in § 924(c) — not by the (conjectured) aims of a subsequent Congress drafting a different statute decades later. *See Bruesewitz v. Wyeth LLC*, 131 S. Ct. 1068, 1081-82 (2011); *United States v. United Mine Workers of Am.*, 330 U.S. 258, 281-82 (1947).

Recognizing the weakness of the government's reply, our dissenting colleague offers another of his own devise. In his view, Congress added subsection (b)(3) to § 1028A merely to underscore the point it already made in

16

subsection (b)(2).  Sometimes, our colleague notes, legislatures employ redundant language.  *See* Dissent at 4-5.  We don't doubt that's true but neither are we entitled to reach such a conclusion lightly.  Respect for democratic authority requires unelected federal judges to exercise great caution before declaring the words enacted by the people's representatives to be superfluous.  As the Supreme Court has (repeatedly) instructed, "[i]t is our duty to give effect, if possible, to every clause and word of a statute" and we should be "reluctant to treat statutory terms as surplusage in any setting."  *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (internal quotation marks and brackets omitted).  In fact, the Court has called this a "cardinal principle" of statutory construction.  *Id.*  Our reading of § 1028A abides these directions and affords meaning to all of Congress's words while our respected colleagues' reading does not, effectively leaving an entire statutory subsection with nothing to do.[3]

\*

So far we've consulted the traditional statutory sentencing structure in § 3661 and § 3553(a), the specific language of § 924(c) itself, and a close legislative cousin in § 1028A.  All point against the government.  But what if we

---

[3] Neither, for that matter, does the legislative history our colleague points to license reading plain statutory terms out of the law.  It merely offers an overview of § 1028A's provisions and remarks unremarkably that they are meant "to ensure the intent of [the] legislation is carried out."  H.R. Rep. No. 108-528, at 10 (2004), *reprinted in* 2004 U.S.C.C.A.N. 779, 785-86.

broaden our view still further and ask about those who ventured down this road before us? Have they found the enormous change to traditional sentencing principles hidden in § 924(c) that we cannot find? The answer does little to help the government's cause.

Take the sentencing commission. It isn't necessary for us to decide what deference (if any) this court owes the commission's interpretations of sentencing statutes. For our present purposes it is surely notable, however, that those appointed by Congress to advise the federal courts on their sentencing responsibilities don't seem to read § 924(c) as the government proposes. The advisory sentencing guidelines expressly state that a § 924(c) sentence *should* influence (and serve to reduce) a sentencing court's calculation of the guidelines range for the underlying offense in at least one way. When a § 924(c) sentence exists, § 2K2.4 advises district courts not to apply certain otherwise available enhancements for the defendant's underlying criminal conduct. Applying weapon enhancements while also sentencing under § 924(c) would amount to "duplicative punishment" in the commission's view by counting the defendant's weapon use twice. *See U.S. Sentencing Guidelines Manual* app. C, amend. 599; *id.* § 2K2.4 cmt. n.4. If, as the government supposes in this appeal, the statute's text barred district courts from considering § 924(c) punishments when issuing sentences for underlying offenses, the guidelines' concern about double-counting would violate this textual command. After all, the government tells us a district court may

18

*never* consider a § 924(c) sentence when fashioning a sentence for the underlying crime — *precisely* what the Sentencing Commission in § 2K2.4 says a district court *ought* to do.[4]

Next consider the case law. The government argues before this court that § 924(c)(1)(A) and (c)(1)(D)(ii) radically limit district courts' traditional discretion to fashion punishments for underlying offenses that are both condign and fully considered. Yet for years the government has suggested just the opposite — contending in case after case that district courts *may and should* consider § 924(c) sentences when sentencing for related crimes. And court after

---

[4] The dissent suggests the government's reading of § 924(c) might be reconciled with § 2K2.4 if the guideline is interpreted to permit considering the § 924(c) *conviction* alone, apart from the accompanying *sentence*. *See* Dissent at 5. But of course § 2K2.4 fears duplicative *punishment* and does so only because the § 924(c) conviction comes with a prison *sentence* attached.

The government (but not the dissent) argues that § 5G1.2(a) advises sentencing courts to disregard § 924(c) mandatory minimums when fixing related prison sentences. In fact, § 5G1.2(a) does no such thing. That provision merely advises that mandatory minimum sentences like those found in § 924(c) should "be determined by that statute and imposed independently" of other sentences. So a § 924(c) gun sentence should be determined by the minimums prescribed in that statute rather than using a § 3553(a) analysis (no surprise there) and should run consecutively to any other sentence imposed for the underlying crime (no surprise there either). Absent in § 5G1.2(a) is any suggestion that the sentence *for the underlying crime* must be calculated without reference to the existence of the § 924(c) sentence. *See United States v. Rodriguez*, 112 F.3d 26, 30 (1st Cir. 1997); *Vidal-Reyes*, 562 F.3d at 55. Indeed, the applicable note confirms that § 5G1.2(a) only requires that § 924(c)'s mandatory minimum "be imposed to run consecutively to any other term of imprisonment." *U.S. Sentencing Guidelines Manual* § 5G1.2 cmt. n.2. Here again there is no effort to control or dictate what that "any other term of imprisonment" should be.

19

court has agreed.

Many cases arise this way. In light of § 924(c)'s mandatory minimum for a gun charge, the district judge decides that a relatively modest sentence for the underlying crime of violence (or drug offense) would serve § 3553(a)'s parsimony principle. Then the court of appeals overturns the § 924(c) conviction and, despite the defendant's protests, permits the district court to revisit and adjust upward its sentence for the underlying crime. At no point in this process does the government say what it says here — that it would be entirely wrong for a district court to assess the impact of the § 924(c) sentence when sentencing for the underlying offense under § 3553(a). Instead, the government says *of course* the district court properly considered the § 924(c) sentence in its original § 3553(a) sentencing analysis for the underlying crime. And the government says *of course* the district court on remand should now account for the fact that the § 924(c) sentence is gone. The government says all this even when the district court in the initial sentencing proceeding offered no hint that the defendant's mandatory § 924(c) sentence influenced its sentence for the underlying crime.

Typically, the government's argument goes like this: "[T]he fact that the District Court imposed separate sentences on [the defendant] for each count of conviction did not diminish their legal relatedness . . . ."[5] And typically the

[5] Brief for the United States of America at 18, *Rodriguez v. United States*, 116 F.3d 1002 (2d Cir. 1997) (No. 96-2763), 1996 WL 33667818; *see also* Final

20

courts of appeals respond with a remand for resentencing like this: "Clearly, the § 924(c) offense and the underlying offense are interdependent and result in an aggregate sentence, not sentences which may be treated discretely."[6]

That in all these cases stretching back nearly twenty years no one has found anything cowled within § 924(c) to prohibit district courts from accounting for a § 924(c) sentence when fixing the length of a related sentence — that the government itself has previously argued that the relevant statutes *allow* district courts just this discretion — surely counts as further evidence that the government's current interpretation of § 924(c) is, well, rather remarkable.[7]

---

Brief and Addendum for Appellee at 18, *United States v. Townsend*, 178 F.3d 558 (D.C. Cir. 1999) (No. 98-3041), 1998 WL 35240367 ("[T]he inter-dependency between § 924(c) and [the guidelines calculation for the underlying drug offense] results in an aggregate sentence for drug convictions and simultaneous § 924(c) convictions, not separate and distinct sentences for each violation."); Brief of Plaintiff-Appellee United States of America at 12, *United States v. Watkins*, 147 F.3d 1294 (11th Cir. 1998) (No. 97-2224), 1997 WL 33574255 ("The district court properly viewed Defendant's sentence as a 'package' . . . .").

[6] *United States v. Mendoza*, 118 F.3d 707, 710 (10th Cir. 1997); *see also United States v. Townsend*, 178 F.3d 558, 568 (D.C. Cir. 1999) ("[A] mandatory [§ 924(c)] sentence may influence the sentence imposed on other counts."); *United States v. Rodriguez*, 112 F.3d 26 (1st Cir. 1997); *United States v. Mata*, 133 F.3d 200 (2d Cir. 1998); *United States v. Davis*, 112 F.3d 118 (3d Cir. 1997); *United States v. Smith*, 115 F.3d 241 (4th Cir. 1997); *United States v. Rodriguez*, 114 F.3d 46 (5th Cir. 1997); *Pasquarille v. United States*, 130 F.3d 1220 (6th Cir. 1997); *United States v. Smith*, 103 F.3d 531 (7th Cir. 1996); *Gardiner v. United States*, 114 F.3d 734 (8th Cir. 1997); *United States v. McClain*, 133 F.3d 1191 (9th Cir. 1998); *United States v. Easterling*, 157 F.3d 1220 (10th Cir. 1998); *United States v. Watkins*, 147 F.3d 1294 (11th Cir. 1998).

[7] The dissent suggests that the weapon enhancement provision in § 2K2.4 "explains" why district courts may reconsider underlying offense sentences upon

Of course and as our dissenting colleague rightly notes, a handful of recent cases from outside the resentencing context do adopt the government's (current) view that § 924(c) mandatory minimums may never influence the sentence for an underlying crime. *See* Dissent at 3-4.[8] Yet many others expressly reject just this line.[9] Neither do we find the dissent's handful of cases persuasive on their own terms. They are often terse to the point of being summary (one contains two paragraphs of reasoning, another four). None pauses to consider the import of

a defendant's successful challenge to a § 924(c) conviction. As the dissent notes, once the § 924(c) conviction evaporates applying a weapon enhancement for the underlying offense no longer threatens to count the same conduct twice. *See* Dissent at 5 n.1. But none of this helps the dissent's cause. Even if true, it still implies that a § 924(c) punishment *may* be considered at sentencing for an underlying offense. Besides, in truth, these cases generally don't restrict the sentencing judge's discretion at resentencing solely to applying the weapon enhancement. *See, e.g.*, *Townsend*, 178 F.3d at 568 (collecting cases).

[8] *See, e.g.*, *United States v. Roberson*, 474 F.3d 432, 436 (7th Cir. 2007); *United States v. Chavez*, 549 F.3d 119, 133-35 (2d Cir. 2008); *United States v. Franklin*, 499 F.3d 578, 584-85 (6th Cir. 2007); *United States v. Hatcher*, 501 F.3d 931, 933 (8th Cir. 2007); *United States v. Powell*, 444 F. App'x 517, 522 (3d Cir. 2011); *United States v. McCullers*, 395 F. App'x 975, 978 (4th Cir. 2010) (per curiam).

[9] *See, e.g.*, *United States v. Webster*, 54 F.3d 1, 4 (1st Cir. 1995) ("[I]n departing from a guideline sentence the district court is free to exercise its own judgment as to the pertinence, if any, of a related mandatory consecutive sentence [under § 924(c)]."); *Franklin*, 499 F.3d at 587-89 (Moore, J., concurring in the judgment); *United States v. Ezell*, 417 F. Supp. 2d 667, 678 (E.D. Pa. 2006), *aff'd on other grounds*, 265 F. App'x 70 (3d Cir. 2008); *Angelos*, 345 F. Supp. 2d at 1260; *United States v. Ciszkowski*, 430 F. Supp. 2d 1283, 1288 (M.D. Fla. 2006), *aff'd on other grounds*, 492 F.3d 1264, 1271 (11th Cir. 2007); *United States v. Roberson*, 573 F. Supp. 2d 1040, 1050-51 (N.D. Ill. 2008); *United States v. Barton*, 442 F. Supp. 2d 301, 303-04 (W.D. Va. 2006); *United States v. Bailey*, No. CR 12-4083-MWB-2, 2013 WL 4735697 (N.D. Iowa Sept. 3, 2013).

§ 3661. None addresses § 924(c)'s demand only that its sentences run consecutively to *any* other sentences, in addition to *whatever* punishment is "provided for" underlying offenses, without purporting to provide that punishment itself or affect its length. All overlook § 1028A, failing to consider the fact their interpretations of § 924(c) effectively render § 1028A(b)(3) superfluous. None repudiates (or even mentions) the many cases — including cases from these very same courts — treating § 924(c) and underlying sentences as properly interrelated when the government seeks resentencing after the defendant's § 924(c) conviction is vacated. One case even seems to treat the sentencing guidelines as binding rather than advisory.

Neither can anyone be expected to remain insensible to the anomaly the government's notably inconsistent advocacy on this issue would seem to invite. On the one hand, the government seems to think that when a sentencing judge shows any sign of accounting for § 924(c) by reducing prison time for an underlying offense, it can object and require the latter sentence to be independently calculated (and in all likelihood longer). On the other, the government presumably wishes to preserve the option to insist on the recalculation (and in all likelihood the lengthening) of underlying offense sentences should any § 924(c) convictions be overturned, because whether or not the sentencing court showed any sign of doing so it did consider the § 924(c) sentence in its § 3553(a) analysis for the underlying crime. But it seems to us

23

that district courts either may lawfully consider § 924(c) when sentencing for underlying offenses under § 3553(a) or they may not.  Surely (hopefully) the government does not mean to suggest a district court may consider a § 924(c) sentence only when that helps it win longer prison terms.

*

With so much against it in the text and structure of the relevant statutes, with so little support from administrative or case law authorities, the government is left with a vague purposive argument.  Because Congress meant to be "severe" in punishing § 924(c) for gun convictions with long mandatory minimum sentences, we should *also* ensure "severity" by precluding district courts from taking § 924(c) sentences into account even when they are engaged in sentencing for separate convictions under § 3661 and § 3553(a).  *Cf.* Dissent at 2.  If there's any doubt about how best to interpret § 924(c), we should opt for the more severe option to effect (presumed) congressional intent:  a sort of rule-of-severity interpretive canon, if you will.

This suggestion commits the logical mistake of overgeneralization.  Because the statute may command severity in one way (lengthy mandatory minimums for gun convictions) the government surmises we should be severe in another way too (upending normal sentencing procedure for related crimes).  But that much doesn't follow.  Rather than attempt to divine some abstract purposes the government surmises Congress sought to achieve and then force all the

24

statute's provisions into their service, courts owe respect first and foremost to "the means [Congress] has deemed appropriate, and prescribed, for the pursuit of those purposes." *MCI Telecomm'ns Corp. v. Am. Tel & Tel. Co.*, 512 U.S. 218, 231 n.4 (1994). After all, it's a rare statute that pursues a single purpose unrelentingly. In the real world, laws embody legislative compromises and seek to balance disparate interests. And it's hardly strange to think that Congress might have wished to preserve a degree of judicial discretion at sentencing — discretion, after all, that both represents the historical norm and is itself embodied in congressional statutes. *See Bd. of Governors v. Dimension Fin. Corp.*, 474 U.S. 361, 374 (1986) ("Invocation of the 'plain purpose' of legislation at the expense of the terms of the statute itself . . . prevents the effectuation of congressional intent."); *Genova v. Banner Health*, 734 F.3d 1095, 1099 (10th Cir. 2013) ("[O]ne can go badly awry assuming . . . that *whatever* might seem to further a statute's primary objective must be the law." (citation and quotation marks omitted)).

Besides, even if the government's arguments about the import of § 924(c)(1)(A) and (c)(1)(D)(ii) might be thought by others to contain some ambiguous force we have failed to appreciate fully, we don't default to a presumption of severity but to the rule of lenity. The rule of lenity dictates that any doubts at the end of a thorough statutory investigation must be resolved for the defendant, any tie must go to the citizen, not the state. In our legal order it is

25

not the job of independent courts to bend ambiguous statutory subsections in procrustean ways to fit the prosecutor's bill. *See, e.g.*, *Bifulco v. United States*, 447 U.S. 381, 387 (1980); *United States v. R.L.C.*, 503 U.S. 291, 305-06 (1992); *United States v. Universal C.I.T. Credit Corp*, 344 U.S. 218, 221-22 (1952).

The government's contrary argument brings to mind *Kimbrough v. United States*, 552 U.S. 85 (2007). There the trouble began when Congress set minimum and maximum sentences for cocaine offenses at a 100:1 powder-to-crack ratio. From this fact, the government inferred that courts sentencing *between* the minimum and maximum had to use the same 100:1 ratio. Though nothing in the statutory text compelled such a result, the government argued that anything less would've offended Congress's overarching (if unexpressed) purpose. The Supreme Court rejected that view emphatically because it "lack[ed] grounding" in the statutory text. 552 U.S. at 102. The statute in that case set sentencing floors and ceilings using a 100:1 ratio but said "nothing about the appropriate sentences within these brackets" and left those matters to the normal operation of § 3661 and § 3553(a). *Id.* at 102-03. Exactly the same holds true here. The statute in our case sets sentencing floors for gun crimes under § 924(c). We respect and enforce that direction. But nothing in § 924(c) speaks to the length of sentence a district court must issue for an underlying crime or the factors it may or must consider. The sort of restrictions the government seeks simply lack grounding in

26

statutory text.[10]

*

Having said so much to this point we should take care to emphasize what we have not said. If sentencing judges may take § 924(c) sentences into account when sentencing for underlying offenses, the dissent seems to worry as a pragmatic matter that nothing will prevent them from issuing shorter underlying offense sentences solely because they think the mandatory § 924(c) sentence "excessive." *See* Dissent at 3. But nothing we've said should be taken as suggesting a district court may issue a sentence based on nothing more than a policy disagreement with Congress about the length of the mandatory minimums it has prescribed. In this appeal, we recognize instead and only that the length of a § 924(c) sentence can at least sometimes bear legitimate relevance to the sentencing considerations (like the time needed to ensure the protection of the public) that Congress has statutorily directed courts to consider when sentencing for the underlying crime.

---

[10] It may pose a nice question, too, just how far Congress may go, consistent with the Constitution's guarantees, in forcing a sentencing judge to disregard undisputed facts about a defendant. *See Pepper*, 131 S. Ct. at 1240 (noting that "both before and since the American colonies became a nation," courts have had "wide discretion in the sources and types" of information used to assist at sentencing). But, happily, it is a question we need not answer in this case because, as we've seen, nothing in the text of § 924(c) compels such a result.

Even here our point is exceedingly narrow. We don't mean to suggest that a district court *must* reduce a defendant's crime of violence sentence in light of a related § 924(c) sentence. We don't even mean to suggest a sentencing judge *should* determine what bottom-line aggregate sentence best serves her understanding of a just punishment for all of the defendant's crimes and then adjust the individual sentences to achieve that result. Instead, we acknowledge simply that a district court *may* at least sometimes find the length of a § 924(c) sentence relevant to the sentencing factors Congress has expressly directed it to consider when sentencing for an underlying crime. The government admits that a district court generally may find "other sentences" it has issued for related counts of conviction relevant when applying "§ 3553(a)'s broad categories of consideration" to ascertain an appropriate punishment for a remaining count of conviction. Gov't Br. 29. Today we hold only that nothing in § 924(c) upends this traditional principle.

To be sure, allowing district courts to consider a § 924(c) conviction and sentence for *proper* purposes cannot guarantee that none will ever consider a § 924(c) conviction and sentence for *improper* purposes. But that sort of problem is always present at sentencing — it's always possible courts might reduce or increase a sentence for reasons not authorized by law. And the solution for that problem is already in hand: we engage in appellate review of sentences to guard against such abuses of discretion. *See* 18 U.S.C. § 3742. Courts of appeals are

28

fully empowered to intervene when a district court bases a sentence solely on hostility to Congress's laws (including § 924(c)) rather than a good-faith application of Congress's laws (including § 3553(a)), or when a court's attempts to apply sentencing law yield a result outside the realm of the reasonable. *See, e.g.*, *Gall v. United States*, 552 U.S. 38, 51 (2007).[11]

Worries that district courts might abuse the discretion afforded them by law may be reason enough to permit appellate review, but they aren't reason enough to withdraw that discretion in defiance of the plain text of the relevant statutory authorities. Maybe we can debate whether in other areas the law is or should be written with an eye to the likely reaction of the "bad man." *Compare* Oliver Wendell Holmes, Jr., *The Path of the Law*, 10 Harv. L. Rev. 457, 459-61 (1897) (suggesting yes), *with* H.L.A. Hart, *The Concept of Law* 40 (3d ed. 2012) (suggesting no). But surely we have not yet arrived at the day when appellate judges feel the need to adorn sentencing statutes with new language of their own hand out of concern for the "bad district judge."[12]

---

[11] So, for example, we suspect it will be a good deal harder for a judge striving to follow § 3553(a) to sustain a sincere judgment that zero years provides "sufficient, but not greater than necessary" punishment for an underlying offense when the § 924(c) gun sentence is 5 years — as in our colleague's hypothetical example — than when it's the 35 years Mr. Smith faces or still longer terms defendants in other cases have confronted. *See* Dissent at 1. And on appellate review, such a judgment (whether sincere or not) might again be harder to sustain.

[12] Even if we were tempted to manufacture a rule based on a cynical assumption about the nefarious hidden motives of sentencing judges, the government's proposal in this case would do little to address the perceived

\*

At the end of this long road, it is apparent to us that nothing in current law prohibits a district court's considering a § 924(c) conviction and sentence when seeking to assign a just punishment for a related crime of violence. Sentencing in this context may proceed just as it does elsewhere, with a humble recognition that "no more difficult task confronts judges than the determination of punishment" and "[e]ven the most self-assured judge may well want to bring to his aid every consideration that counsel for the accused can appropriately urge." *Carter v. Illinois*, 329 U.S. 173, 178 (1946).[13]

---

problem. A "bad judge," after all, could just as easily reduce the sentence for an underlying crime out of sheer dislike of § 924(c) — or for any number of impermissible reasons — all while insisting on the record that his decision was influenced only by lawful factors.

[13] There remains one final matter we must address. Mr. Smith also argues the district court erred by admitting testimony from a forensic firearm and toolmark examiner. Firearm toolmark analysis has recently come under attack for depending on subjective judgment, rarely using control weapons, and risking an observer effect. *See, e.g.*, *United States v. Taylor*, 663 F. Supp. 2d 1170, 1179 (D.N.M. 2009); *United States v. Green*, 405 F. Supp. 2d 104, 119-23 (D. Mass. 2005); *see also* Nat'l Research Council, *Strengthening Forensic Science in the United States: A Path Forward* 150-55 (2009). The problem is, Mr. Smith made plain at oral argument that he doesn't challenge the expert's admission in this case on substantive grounds: he argues only that the district court should have held a hearing before allowing his testimony rather than inviting the parties' submissions on paper. But Mr. Smith identifies no evidence or argument he wanted to place before the court in person that he wasn't able to put forth on paper. If the district court erred at all, then, Mr. Smith gives us no reason to think the error was anything but harmless. And we won't require a new proceeding in the district court when there's so little reason to doubt "the existing one reached the right result." *StorageCraft Tech. Corp. v. Kirby*, 744 F.3d 1183, 1191 (10th Cir. 2014); *see also Kinser v. Gehl Co.*, 184 F.3d 1259, 1271-72 (10th

The conviction is affirmed but the case is remanded for resentencing consistent with the terms of this opinion.

Cir. 1999), *abrogated in part on other grounds by Weisgram v. Marley Co.*, 528 U.S. 440 (2000).

13-1112, <u>United States v. Smith</u>

**LUCERO**, J., concurring in part, dissenting in part.

My colleagues ask: "Must a sentencing court studiously ignore one of the most conspicuous facts about a defendant when deciding how long he should spend in prison?" (Majority Op. 1.) That might be an interesting question to address, but as I see it, the real question presented in this appeal is whether the plain language of 18 U.S.C. § 924(c) allows a trial court to reduce a defendant's sentence for an underlying crime of violence based on concerns that the statutorily prescribed § 924(c) sentence is too harsh. Because Congress has mandated that § 924(c) sentences be imposed "in addition to" the sentence for an underlying crime of violence, I would answer that question in the negative.

Consider a district court judge who, after weighing the factors set forth in § 3553(a), determines that a defendant convicted of robbery should be sentenced to five years' imprisonment. Upon announcing his intent to impose the sentence, the prosecutor interjects that the defendant has also been convicted of using a firearm during and in relation to a crime of violence under § 924(c), which carries a five-year minimum. The judge acknowledges that he overlooked the § 924(c) count, but rules that a total sentence of five years is nevertheless proper. Because the § 924(c) sentence must be imposed consecutive to the robbery sentence, the district court revises the robbery sentence down to zero.

Under these circumstances, no one would describe the § 924(c) sentence as having been imposed "in addition to" the robbery sentence, as § 924(c)(1)(A) requires. Nonetheless, the majority concludes that this type of procedure would not violate the text

of § 924(c).  Because the unambiguous statutory language precludes such a result, I respectfully dissent.

Mandatory minimum sentences contained in § 924(c) have been described as "extremely severe," United States v. T.M., 413 F.3d 420, 426 (4th Cir. 2005), "draconian," United States v. Hebert, 131 F.3d 514, 526 (5th Cir. 1997) (DeMoss, J., dissenting in part), and "unjust, cruel, and irrational," United States v. Angelos, 345 F. Supp. 2d 1227, 1263 (D. Utah 2004).  It is difficult to quibble with these statements.  The Judicial Conference of the United States, the U.S. Sentencing Commission, and the American Bar Association have all urged Congress to reconsider the prudence of lengthy mandatory minimums.  See United States v. Bowen, No. CR-10-204, 2012 U.S. Dist. LEXIS 50670, at *24-44 (E.D. La. Apr. 11, 2012) (unpublished) (collecting commentary).

Despite the problems with § 924(c), "[i]t is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms."  First Nat'l Bank v. Woods (In re Woods), 743 F.3d 689, 694 (10th Cir. 2014) (quotation omitted).  Mandatory minimums in § 924(c)(1)(A) must be imposed "in addition to the punishment provided for [an underlying] crime of violence or drug trafficking crime," § 924(c)(1)(A), and "[n]otwithstanding any other provision of law," may not "run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence or drug trafficking crime during which the firearm was used, carried, or possessed," § 924(c)(1)(D).

As the foregoing hypothetical illustrates, accepting Smith's argument would permit district courts to reduce or even replace an otherwise proper sentence for an underlying crime of violence based on the court's concern that the mandatory minimum is excessive. I agree with the vast majority of circuits to have considered this issue that such a procedure violates the unambiguous command that § 924(c) sentences be imposed "in addition to" the sentence for an underlying crime of violence. See United States v. Chavez, 549 F.3d 119, 135 (2d Cir. 2008) ("[A] sentencing court is required to determine the appropriate prison term for the count to which the § 924(c) punishment is to be consecutive; and if the court reduces the prison term imposed for that underlying count on the ground that the total sentence is, in the court's view, too severe, the court conflates the two punishments and thwarts the will of Congress that the punishment imposed for violating § 924(c) be 'addition[al]' and 'no[t] . . . concurrent[].'"); United States v. Hatcher, 501 F.3d 931, 933 (8th Cir. 2007) (sentencing court could not permissibly "conflate[] the sentences for the § 924(c) offenses and the related [underlying] crimes"); United States v. Franklin, 499 F.3d 578, 583 (6th Cir. 2007) ("This statutory language reflects the intent of Congress that the § 924(c)(1) sentence must be imposed 'in addition to' a reasonable guideline range sentence."); United States v. Roberson, 474 F.3d 432, 436 (7th Cir. 2007) ("[T]o use the presence of a section 924(c)(1) add-on to reduce the defendant's sentence for the underlying crime would be inconsistent with Congress's determination to fix a minimum sentence for using a firearm in [the underlying crime]."); see also United States v. Powell, 444 F. App'x 517, 522 (3d Cir. 2011) (unpublished) ("The District Court properly refused to give any weight to the severity of the statutory

-3-

minimum sentences for the § 924(c) counts when determining the sentence for the [underlying] counts."); United States v. McCullers, 395 F. App'x 975, 978 (4th Cir. 2010) (unpublished) ("[U]nder § 924(c), a defendant is first sentenced for the underlying drug trafficking offense, without consideration for the applicable consecutive sentences related to the firearm violations."). But see United States v. Webster, 54 F.3d 1, 4 (1st Cir. 1995) ("[I]n departing from a guideline sentence the district court is free to exercise its own judgment as to the pertinence, if any, of a related mandatory consecutive sentence.").

The majority cites to §§ 3553 and 3661, which set the general sentencing policies district courts must follow. (Majority Op. 4-9.) I agree that § 924(c) strays from these general policies, and from our history of individualized judicial sentencing practices. (See Majority Op. 4-5.) But "specific statutory provisions prevail over more general provisions." United States v. Burke, 633 F.3d 984, 989 (10th Cir. 2011) (quotation omitted). And Congress may impinge upon judicial discretion by setting mandatory minimums. See United States v. Hatch, 925 F.2d 362, 363 (10th Cir. 1991).

In addition to the general statutory provisions, the majority relies on 18 U.S.C. § 1028A, another mandatory minimum that includes language similar to § 924(c), but adds the proviso that "a court shall not in any way reduce the term to be imposed for [an underlying] crime so as to compensate for, or otherwise take into account, any separate term of imprisonment imposed or to be imposed for a violation of this section." § 1028A(b)(3). If the "in addition to" language contained in both § 924(c) and § 1028A were enough, the majority concludes, this latter proviso would be superfluous. (Majority

Op. 14-15.)  But Congress may include technically unnecessary language out of an abundance of caution under the canon ex abundanti cautela.  See Marx v. Gen. Revenue Corp., 668 F.3d 1174, 1183 (10th Cir. 2011).  Indeed, the legislative history of § 1028A indicates that Congress directed the mandatory minimum to be imposed "in addition to any term of imprisonment for the underlying offense," and included subsection (b)(3) "to ensure the intent of th[e] legislation is carried out."  H.R. Rep. No. 108-528, at 10 (2004), reprinted in 2004 U.S.C.C.A.N. 779, 785-86.  That Congress chose a belt-and-suspenders approach in one statute does not render suspenders alone insufficient.

Finally, the majority cites to a Guidelines application note, U.S.S.G. § 2K2.4, cmt. n.4, which provides that a sentencing enhancement for using a firearm should not be applied to an underlying crime of violence if the defendant is also convicted under § 924(c).  (See Majority Op. 18-19.)[1]  Whether this note is consistent with the statute is a reasonable question, but not one before us.  It may be that the application note permissibly allows for consideration of a § 924(c) conviction rather than a § 924(c) sentence given that its treatment of the enhancement does not vary based on which of § 924(c)'s several mandatory minimum sentences applies.  In any event, a Guidelines

---

[1] The availability of this enhancement for an underlying crime of violence absent a § 924(c) conviction explains most of the cases discussing the legal relatedness of the two charges.  (See Majority Op. 21 & n.6.)  These cases concern resentencing for defendants whose § 924(c) convictions were vacated.  See, e.g., United States v. Mendoza, 118 F.3d 707, 710 (10th Cir. 1997).  But see United States v. Watkins, 147 F.3d 1294, 1296-97 (11th Cir. 1998) (holding that the availability of the § 2D1.1(b)(1) enhancement is not "an integral component of the court's jurisdiction to resentence on unchallenged counts" after a § 924(c) conviction is vacated).

application note cannot trump plain statutory language.  See Dorsey v. United States, 132 S. Ct. 2321, 2327 (2012).

My colleagues present the best argument I have seen for the proposition that district courts may consider § 924(c) mandatory minimums when sentencing defendants for underlying crimes.[2]  The plain language of the statute, however, compels me to respectfully dissent.

---

[2] I also agree with my colleagues in their resolution of Smith's argument regarding the admission of the firearm toolmark analysis.  (See Majority Op. 30 n.13.)