# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued April 16, 2021          Decided June 15, 2021

No. 20-3021

UNITED STATES OF AMERICA,
APPELLEE

v.

GREGORY LASSITER, ALSO KNOWN AS G,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cr-00376-1)

———

*Deborah A. Persico*, appointed by the court, argued the cause and filed the briefs for appellant.

*Kyle B. Grigel*, pro hac vice, argued the cause for appellee. With him on the brief were *Scott A. Meisler*, Supervising Attorney, U.S. Department of Justice, and *Elizabeth Trosman*, Assistant U.S. Attorney.

Before: TATEL, *Circuit Judge*, and SILBERMAN and SENTELLE, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* SENTELLE.

SENTELLE, *Senior Circuit Judge*: Gregory Lassiter pled guilty to multiple counts of conviction stemming from his role in a kidnapping and attempted murder. In 2009, the district court sentenced Lassiter to 324 months imprisonment. In 2020, following a change in law, the court set aside one of Lassiter's judgments and resentenced him to 300 months. Lassiter appeals, arguing that the judge wrongly treated his original sentence as a sentencing package and misapplied the sentencing guidelines. We disagree, and affirm.

# I

## A

In 2008, Gregory Lassiter plotted with Devro Hebron to rob and kill businessman Gregory Lyles. Hebron obtained a pistol and recruited his brother Devon Hebron, Darrin McCauley, David Cooper, and Ryan Wheeler to help. The six men lured Lyles from his business to a townhome, where they beat and bound him. They then used his truck to drive him to a field, where they intended to kill him. McCauley started out driving Lyles's truck, but got cold feet and fled. Cooper took over the driving of the truck. Devon Hebron followed in his van.

At the field, Devon Hebron stayed in his vehicle while the other four took Lyles into the field to kill him. By this point, Wheeler was noticeably scared and nervous. At the field, where the group intended to kill Lyles, Lassiter ordered Wheeler to shoot him. Wheeler refused. Lassiter grabbed the pistol and attempted to shoot Wheeler. The gun did not fire. Lassiter ordered Devro Hebron to fix the pistol. Devro tinkered with the pistol and tried to shoot Lyles, but again the gun did not discharge. The would-be killers

and victim got back in the cars and caravanned to a drugstore, where Devro bought a boxcutter.

As they returned to the field, Lyles fought back by kicking Cooper, who was still driving the truck. That forced the men to pull over. Lassiter slashed Lyles's back with the boxcutter, then handed Cooper the cutter and ordered him to cut Lyles "as much as possible." App. 107. Cooper then slashed Lyles. Although his attackers left him for dead, Lyles survived and contacted police.

**B**

The United States obtained a nine-count indictment against the perpetrators. McCauley and Wheeler cooperated with the prosecution. Lassiter offered to cooperate too, and did provide the government with "generally candid and reliable information about the facts and circumstances surrounding" the kidnapping, but "[g]iven his criminal record and his role in th[e] offense, the government was simply unwilling to enter into a cooperation agreement." App. 155.

Lassiter pled guilty to kidnapping, 18 U.S.C. § 1201(a), to assault with intent to kill while armed, D.C. Code §§ 22-401, -4502, and to using a firearm during a crime of violence, 18 U.S.C. § 924(c)(1)(A). Section 924(c) criminalizes the use or brandishing or discharging of a firearm in the course of committing a crime of violence. It functions essentially as a sentence enhancer. It prohibits "us[ing] or carr[ying]" a gun "during and in relation" to a "crime of violence," or "possess[ing]" a gun "in furtherance of" a "crime of violence." § 924(c)(1)(A). Section 924(c)(3) defines "crime of violence": "an offense that is a felony" and either (A) "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," or (B) "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of

committing the offense." Subsection (A) is known as the "elements" clause; subsection (B) is known as the "residual" clause. *See United States v. Davis*, 139 S. Ct. 2319, 2324 (2019).

Defendants convicted of § 924(c) face a mandatory minimum of five years imprisonment consecutive to any sentence for the underlying violent crime. *See* § 924(c)(1)(A)(i). If the defendant brandished or displayed a firearm, the mandatory minimum is raised to seven years. *See* § 924(c)(1)(A)(ii). If he actually discharges it, the mandatory minimum is raised to ten years. *See* § 924(c)(1)(A)(iii). "Brandish" means "to display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person." § 924(c)(4).

Section 924(c) is applicable to this case because the felony kidnapping count is a crime of violence under the residual clause of § 924(c). Because Lassiter brandished the gun by trying to shoot Wheeler, he faced a mandatory 84-month sentence over and above his sentence for kidnapping.

Federal sentencing guidelines applicable to Lassiter's kidnapping conviction recommend sentencing ranges accounting for a defendant's criminal history and for a crime's offense level. The sentencing judge may vary from the range to guarantee a sentence "sufficient, but not greater than necessary." *See* 18 U.S.C. § 3553(a).

The presentence investigation by the probation office disclosed Lassiter's considerable criminal history. The resulting presentence report (PSR) goes on for pages itemizing his myriad drug and property offenses. It also includes assaulting a woman with a lug wrench, indecently exposing himself, obstructing justice, driving with a suspended license, and recklessly endangering others. In short, Lassiter had committed at least fifteen other crimes and spent nearly half his life behind bars.

Following Guidelines §§ 2A2.1, 2A4.1, and 3E1.1, the probation office calculated an offense level of 38 for the kidnapping: 41 because it involved an attempted first-degree murder causing life-threatening bodily injury, minus 3 because Lassiter promptly pled guilty.

Taken together, Lassiter's criminal history and offense level yielded a sentencing range of 360 months to life imprisonment for the kidnapping count. The District of Columbia's sentencing guidelines suggested 138 to 360 months imprisonment for the D.C. assault count. Adding the § 924(c) count's mandatory 84 consecutive months meant a total range of 444 months to life imprisonment.

The government proposed sentencing Lassiter within the total range because "[b]y any measure," Lassiter was the codefendant "most deserving of jail time." App. 154. Lassiter sought leniency, alleging that he suffered from untreated mental health problems and specifically requesting "a variance" on the kidnapping count "absorb[ing] the seven year mandatory that the Court must impose" for the § 924(c) count. App. 287-88.

The court considered the prosecution and defense arguments. The judge agreed that Lassiter acted "the most violent[ly]" and "the most egregious[ly] of any of the defendants," caused "the majority of Mr. Lyles' most serious injuries," and "very easily could have" also killed Wheeler. App. 291. The judge then sentenced Lassiter to only 324 months imprisonment, reflecting a substantial downward variance on the kidnapping count: just 240 months for kidnapping plus 138 concurrent months for D.C. assault and 84 consecutive months for § 924(c).

The judge emphasized the codefendants' relative level of culpability during each sentencing. At Devro Hebron's sentencing,

for instance, the judge stressed his "responsibility" to "impose sentences *** proportionate to each other, taking into account the level of culpability of each defendant." App. 230. The judge noted that Devro provided the weapons and helped Lassiter plan the crime. The judge sentenced Devro to 216 months imprisonment: 132 months for kidnapping plus 84 consecutive months for § 924(c). (Devro's plea agreement with the United States dropped the D.C. assault charge.)

Reiterating his effort "to treat each of the defendants fairly, consistent with their involvement in the activities," the district judge sentenced Cooper to 180 months imprisonment: 96 months for kidnapping plus 102 concurrent months for D.C. assault and 84 consecutive months for § 924(c). App. 300. Although the judge thought Cooper committed more significant conduct than Devro Hebron, the judge deemed him less culpable overall given Devro's role in planning the crime.

The judge sentenced Devon Hebron, who pled guilty to kidnapping, to 156 months imprisonment. Although the government offered Devon a cooperation agreement to further reduce his exposure, Devon refused to provide evidence incriminating his brother.

The judge sentenced Wheeler and McCauley to 121 months imprisonment each: 37 months for kidnapping plus 84 consecutive months for § 924(c). Their lower sentences reflected their relatively smaller roles and their cooperation at the time of sentencing.

## C

In 2019, the Supreme Court declared the residual clause of § 924(c) unconstitutionally vague in *United States v. Davis*, 139 S. Ct. at 2336. Without the residual clause, kidnapping no longer met

the definition of a "crime of violence." Thus, *Davis* toppled the foundation for the various § 924(c) convictions in this case.

Wheeler, McCauley, Cooper, and Lassiter moved to set aside their § 924(c) convictions under 28 U.S.C. § 2255. The district court granted the motions, vacated the convictions, and resentenced each defendant.

By this time, Wheeler and McCauley were out of prison. The court simply wiped the § 924(c) convictions from their records.

Cooper's resentencing came 134 months into his 180-month sentence. The judge noted that Cooper had served 134 months by December 2019, the month he was resentenced. The court observed that Cooper had achieved remarkable self-improvement that had rendered him "a poster child for post sentence rehabilitation." App. 506. The judge resentenced Cooper to time served.

Lassiter was a different story. Although he completed several educational programs in jail, he also racked up seven disciplinary infractions.

At Lassiter's 2020 resentencing, the judge found that he originally designed Lassiter's sentence as a "sentencing package": a bundle of interdependent sentences as opposed to a string of independent sentences. The judge recalled that he "had in [his] mind a 324 month sentence based upon [Lassiter's] history, [] background, [] prior convictions and [] conduct," and that he "went all the way down to 240" months for kidnapping because he knew that he "was going to have to impose an 84 month consecutive sentence" for § 924(c). App. 514-15. That said, the judge praised Lassiter's participation in the prison's educational programs. The judge resentenced Lassiter to 300 months imprisonment. That added 60 months to the kidnapping count and kept the same 138 concurrent months for the D.C. assault count but reduced the total

sentence by 24 months "to motivate" Lassiter to continue "to participate in [educational] programs and to improve [him]self while in prison." App. 517-18.

**D**

Although Lassiter did not object in the district court to his new sentence, he now appeals, arguing that the district judge wrongly recalled his original sentence as a sentencing package. Lassiter also argues that the updated PSR prepared for his resentencing erroneously calculated the offense level for kidnapping.

Because Lassiter did not make either argument before the district court, we only review for plain error. Put differently, Lassiter must show an obvious error that affected his sentence. *See United States v. Saro*, 24 F.3d 283, 286-88 (D.C. Cir. 1994).

**II**

We begin with Lassiter's challenge to the district judge's 2020 finding that he designed a sentencing package back in 2009. Both sides agree that if the judge originally imposed a sentencing package, then he could maintain the original total after vacating the § 924(c) conviction by increasing Lassiter's kidnapping sentence. Conversely, if the judge originally imposed distinct kidnapping and § 924(c) sentences without a view towards the ultimate total, then he could not alter Lassiter's kidnapping sentence after setting aside the § 924(c) conviction. *See Greenlaw v. United States*, 554 U.S. 237, 253-54 (2008). In other words, if the judge correctly identified Lassiter's original sentence as a package, then the judge had authority to resentence Lassiter to 300 months imprisonment. Yet if the judge mischaracterized Lassiter's original sentence as a package after the fact, then Lassiter's new sentence exceeded the judge's resentencing authority.

Because the judge never actually used the words "sentencing package" at the original sentencing, Lassiter argues that the judge did not intend to impose a package sentence. We disagree.

Lassiter's argument ignores the obvious. When initially sentencing a defendant, a district judge has little reason to articulate whether he tailored an interdependent bundle or strung together independent counts. The judge's approach matters only if it becomes necessary to resentence the defendant, something impossible to know in advance. Simply put, it's hardly revelatory that this judge did not incant the magic "sentencing package" words in 2009. Rather, we must consider the entire record of the original sentencing.

## A

One indicator of the sentencing judge's intent is the substantive relationship between the various counts. In *United States v. Townsend*, we generally observed the "strong likelihood" that "when a defendant is found guilty on a multicount indictment, *** the district court will craft a disposition in which the sentences on the various counts form part of an overall plan." 178 F.3d 558, 567 (D.C. Cir. 1999) (quoting *United States v. Davis*, 112 F.3d 118, 122 (3d Cir. 1997)). We also specifically noted that "[s]entences which include § 924(c) counts are particularly well suited to be treated as a package." *Id.* The counts in such sentences are inherently interdependent, since "without the [underlying violent felony] conviction, there can be no § 924(c)(1) conviction." *United States v. Easterling*, 157 F.3d 1220, 1223 (10th Cir. 1998).

Indeed, the Eleventh Circuit presumes in cases involving § 924(c) "that sentences on each count of a multi-count indictment are part of a package that may, without a case specific inquiry, be revisited to ensure that the overall sentence on the surviving counts is consistent with the district court's intentions." *United States v.*

*Fowler*, 749 F.3d 1010, 1017 (11th Cir. 2014). Relatedly, though not a holding, then-Judge Gorsuch described most circuits' "typical[]" conclusion that a "'§ 924(c) offense and the underlying offense are interdependent and result in an aggregate sentence, not sentences which may be treated discretely.'" *United States v. Smith*, 756 F.3d 1179, 1189 (10th Cir. 2014) (quoting *United States v. Mendoza*, 118 F.3d 707, 710 (10th Cir. 1997) and collecting cases), *cited with approval in Dean v. United States*, 137 S. Ct. 1170, 1176 (2017).

**B**

In considering the question of the judge's intent, we also ask whether the sentence for the underlying violent felony varied from the guidelines range. For example, in *United States v. Smith*, the sentencing judge imposed several concurrent life sentences "for various drug distribution offenses, as well as a consecutive thirty-year term of imprisonment under [] § 924(c)." 467 F.3d 785, 786 (D.C. Cir. 2006). We concluded that the sentence wasn't a package: because the judge imposed "the highest sentence available" for the underlying crimes, those sentences were "not 'unravel[ed]' by vacation of the" related § 924(c) sentence. *Id.* at 790 (alteration in original) (quoting *Townsend*, 178 F.3d at 562).

We reached the opposite conclusion in *Townsend*, not least because the original total "was the result of a downward departure" on the underlying violent felonies. 178 F.3d at 569. Because "[t]he amount of downward departure allowed by a sentencing judge is inevitably affected by the total sentence imposed," we concluded that "the departure *** imposed on the non-[§ ]924(c) counts was chosen in light of the [mandatory] term imposed on the § 924(c) counts." *Id.* As we noted in *Townsend*, "[r]equiring a sentencing judge to retain the full downward departure originally allowed on a given count even when convictions on other counts are vacated could well make judges hesitant to give generous downward

departures in the first instance." *Id.* By extension, "where the district court is sentencing outside the guidelines range, it is particularly important that the district court have discretion to reevaluate the entire sentencing package." *Id.* (quoting *United States v. Watkins*, 147 F.3d 1294, 1297 (11th Cir. 1998)). As then-Judge Gorsuch noted in *United States v. Smith*, "court after court" has concluded "that district courts *may and should* consider § 924(c) sentences when sentencing for related crimes." 756 F.3d at 1188.

## C

As the Eleventh Circuit has held, it is appropriate to presume that a district judge intended a sentencing package. Logically, this should be especially true when the judge imposed a below-guidelines sentence for the violent felony.

Lassiter fails to rebut that reasonable proposition. When pressed to explain why else the district judge would slice ten years off the bottom of Lassiter's kidnapping guidelines range, Lassiter offered two theories: his offer to cooperate with authorities and his mental health issues. Yet the judge never acknowledged Lassiter's offer to cooperate at the sentencing hearing, an offer that the government spurned in all events. Although the judge did bring up Lassiter's clear and "very upsetting" mental health problems, he did so to guarantee that the Bureau of Prisons would "make sure that [Lassiter would] get the treatment that [he] need[ed]." App. 292-93. Neither theory comes close to explaining the 33% discount on Lassiter's kidnapping count, a variance especially striking given Lassiter's concededly "egregious" criminal conduct. *See* Oral Argument at 7:53–8:02.

If anything, the record from the 2009 sentencing supports the district judge's 2020 finding that he originally intended a sentencing package. The judge emphasized the need to craft a

singular "sentence *** to reflect the seriousness of the offense, *** to promote respect for the law, *** to provide just punishment[,] **** and to deter future criminal conduct." App. 292-93. The judge also acknowledged that he could not approach the kidnapping sentence in a vacuum, describing the guidelines recommendation as "only one factor" for a just sentence. App. 291.

Lassiter selectively quotes the district judge at other stages of the proceedings to argue that the judge only intended proportionate sentences on the kidnapping counts. Yet those sliced-and-diced statements cannot negate the actual sentences imposed, which look proportionate as packages. For example, the judge gave Devro Hebron (the second most culpable) 132 months for kidnapping despite giving Devon Hebron (the least culpable) 156 months on the same charge. Yet in total, Devro received 216 months and Devon received 156 months—exactly what one might expect given their relative culpability. The same goes for Cooper. He was more culpable than Devon and received a higher total sentence (180 months to Devon's 156) but a lesser kidnapping sentence (96 months to Devon's 156).

Indeed, the judge's comments at the codefendants' sentencings make it crystal clear that the judge parceled these sentences out as total packages. *See, e.g.*, App. 268 (using Devro Hebron's "total" sentence to assess "proportionality"); App. 333 (highlighting Cooper's "overall sentence"). Especially on plain error review, we will not stretch this record to fit Lassiter's counterintuitive construction.

Lassiter also makes much of the PSR's passing reference to Guidelines § 2A4.1(b)(3), which increases the kidnapping offense level by two "[i]f a dangerous weapon was used." It is true that enhancement risks "double counting" if applied because of Lassiter's firearm use, that is the § 924(c) sentence already addresses that conduct. Guidelines § 2K2.4 cmt. background.

However, the PSR traced this enhancement to Lassiter's boxcutter use. Anyways, this is beside the point: because § 2A4.1(b)(7) prescribed substituting the kidnapping offense level with the higher offense level for attempted first-degree murder causing life-threatening bodily injury, the district judge never actually applied § 2A4.1(b)(3).

Finally, Lassiter compares his resentencing to McCauley, Wheeler, and Cooper's resentencings, noting that the district judge carved off their § 924(c) sentences without modifying their kidnapping sentences. Even if Cooper, McCauley, and Wheeler's new sentences reveal anything about Lassiter's original sentence, they don't undermine the judge's finding that he originally intended a package, for them or for Lassiter. *Cf. Pepper v. United States*, 562 U.S. 476, 490 (2011) (permitting district courts to consider post-sentence rehabilitation when resentencing defendants). By their resentencings, McCauley and Wheeler were already released, so they had no remaining prison term to modify. Likewise, Cooper's exceptional "level of rehabilitation" justified reducing his sentence to time served. App. 506.

\* \* \*

All told, Lassiter fails to show that the district judge obviously erred at resentencing by characterizing Lassiter's original sentence as an aggregate package. To the extent Lassiter separately argues that the district judge erroneously overlooked Lassiter's request for a lower sentence reflecting his alleged rehabilitation, the argument runs aground on the record: the district judge did "consider[]" Lassiter's "progress" before imposing the new sentence. App. 518.

## III

Lassiter's challenge to his kidnapping offense level also fails. Recall that Lassiter participated in three attempted murders during

the kidnapping: shooting Wheeler with the broken gun, shooting Lyles with the broken gun, and slashing Lyles with the boxcutter. As a result, even though Lassiter pled guilty to kidnapping, a specific provision in the kidnapping sentencing guideline, § 2A4.1(b)(7), required that the guideline for attempted murder, § 2A2.1, controlled Lassiter's offense level. Lassiter claims that the updated PSR prepared for resentencing misapplied § 2A2.1(b)(1)(A), a four-level enhancement for causing "life-threatening bodily injury" during an attempted murder.

The original PSR applied § 2A2.1(b)(1)(A) without specifying which attempted murder caused the bodily injury. By contrast, the updated PSR tied § 2A2.1(b)(1)(A) to the attempted shootings. Lassiter argues that applying § 2A2.1(b)(1)(A) based on the attempted shootings rather than the boxcutter slashing constituted plain error because no one sustained injuries from the broken gun.

Lassiter's attempt to show plain error fails twice over. *First*, he cannot claim that the updated PSR's factual basis for § 2A2.1(b)(1)(A) affected his sentence: elsewhere in both the original and the updated PSR, Lassiter "agreed that there was a life-threatening bodily injury," and "therefore, four levels are added [under] USSG §2A2.1(b)(1)." App. 537-38, 572; *accord* App. 280.

*Second*, and in all events, there was no error. Put simply, the issue is not what the PSR said, but rather what the district judge did. The record settles that the judge based § 2A2.1(b)(1)(A) on the boxcutter slashing, not on the attempted shootings.

At Lassiter's original sentencing, the district judge causally connected Lyles's bodily injuries with the boxcutter slashing: "You tried to shoot Mr. Lyles, you tried to shoot Mr. Wheeler, you were with the box cutter, responsible for the majority of Mr. Lyles' most serious injuries." App. 291. That connection comports with context

from the original PSR: although the paragraph applying § 2A2.1(b)(1)(A) didn't specify a factual basis for the enhancement, the immediately preceding paragraph applied a different enhancement based on the boxcutter slashing. It's also consistent with the judge's remarks at the codefendants' sentencings. *See, e.g.*, App. 204-05 (connecting the "life-threatening bodily injury" with the "box cutter" at Devon Hebron's sentencing).

At Lassiter's resentencing, the sentencing judge incorporated his guidelines analysis (including the offense-level calculation) from the original sentencing. Indeed, the judge only mentioned the updated PSR in passing. The judge did, however, reconnect the boxcutter slashing with Lyles's bodily injuries:

> [You t]ried to shoot one of your co-conspirators in crime, tried to kill Mr. Lyles and the gun didn't work. You went and got a box cutter and used it. **** And Mr. Lyles lay there in the back of the car bleeding with all of these cuts all over his body pretending to be dead. I remember him being here in Court on numerous occasions during status conferences and other proceedings, it's amazing that he was alive.

App. 514.

Given the district judge's statements from Lassiter's original sentencing and echoed at Lassiter's resentencing, we conclude that the district judge applied § 2A2.1(b)(1)(A) based on the boxcutter slashing, not on the attempted shootings.

**CONCLUSION**

In sum, Lassiter fails to rebut our presumption that the district judge intended a sentencing package, and the record refutes his challenge to his kidnapping offense level. We will affirm the district court's sentence.

For the reasons set forth above, we conclude that Lassiter has not only failed to show clear error, he has shown no error at all. The judgment of the district court is

*Affirmed.*