**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 19, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JESSIE RIVERA,

    Defendant - Appellant.

No. 22-6087
(D.C. No. 5:11-CR-00028-HE-1)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **MURPHY**, and **EID**, Circuit Judges.
_____

After examining the briefs and appellate record, this court has determined unanimously that oral argument would not materially assist the determination of this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). Accordingly, we honor the parties' requests and order the case submitted without oral argument.

Jessie Rivera, a serial violator of the conditions of his terms of supervision, challenges on appeal the substantive reasonableness of his twenty-four month sentence for, once again, violating the conditions of his supervised release. In particular, Rivera asserts the length of the sentence, when coupled with the fact it

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

was ordered to run consecutively to the sentence imposed for a crime that underlaid the revocation of supervised release, renders it unreasonably harsh. Because Rivera has not demonstrated that the district court abused its considerable discretion in imposing upon him a twenty-four month consecutive sentence, this court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a) and **AFFIRMS** the district court's judgment.

In 2011, Rivera was convicted of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). He was sentenced to thirty-six months in prison and three years of supervised release. The district court revoked Rivera's supervised release in 2017 and sentenced him to eight months in prison, with a further term of twenty-five months of supervised release. In 2020, the district court again revoked Rivera's supervised release. The district court sentenced Rivera to ten months in prison, to be followed by a twelve-month term of supervised release. Notably, the 2020 revocation was based on state convictions for possession of a firearm, possession of a controlled dangerous substance, and aggravated eluding of a police officer.

Rivera began his third term of supervised release on January 25, 2021. He immediately struggled in supervision and admitted to using methamphetamine, cocaine, and marijuana. He tested positive in twelve of his fourteen collected urine screenings and failed to submit to testing five times. His probation officer discussed placing him in a residential substance abuse treatment facility, but Rivera claimed "he would discontinue use immediately so he could support his

family." On April 26, 2021, Rivera was arrested for reckless driving after drag racing. On June 14, 2021, he was arrested for reckless driving and attempting to elude a police officer. He led officers on a chase after he failed to stop at a stop sign, with speeds near ninety miles per hour. The chase ended with Rivera crashing into the Oklahoma River. He was arrested but released hours later.

Shortly thereafter, Rivera's probation officer filed a Petition for Warrant or Summons for Offender Under Supervision. The petition alleged (1) Rivera committed new crimes on April 26th and June 14th, (2) he violated the terms of his supervised release as evidenced by positive urine tests for amphetamines and cannabinoids on April 20, 27, May 28, and June 3, 2021, and his admission "that he used several drugs prior to his test," and (3) he failed to submit urine samples on May 11 and 20, 2021. When the United States Marshal Service arrested Rivera on June 16, 2021, after submission of the petition and judicial authorization of a warrant, he appeared to be "under the influence" and was seated in the passenger seat of a vehicle. From under that seat, marshals recovered a loaded handgun with a removed serial number. They also found heroin, methamphetamine, and marijuana, which Rivera admitting to possessing. Rivera's probation officer filed an Amended Petition for Warrant or Summons for Offender Under Supervision, adding the June 16th handgun possession to the list of new crimes he committed while on supervised release, and adding a fourth violation for possession of heroin, methamphetamine, and marijuana on June

16th, and a fifth violation for Rivera's failure to report his June 14th arrest to his probation officer.

On June 24, 2021, the probation officer filed a violation report. It noted the highest grade of violation was Grade B and that Rivera fell into criminal history category III, which yielded an advisory sentencing range of eight to fourteen months' imprisonment. *See* U.S.S.G. § 7B1.4(a). The probation officer, nevertheless, recommended a prison sentence of twenty-four months, with no supervised release to follow, "[b]ased upon the alleged violations, his continued pattern of possession of firearms and narcotics, and the complete disregard that [Rivera] has shown towards public safety, the law and towards his supervision." In the interim, the government filed an information against Rivera, charging him with the crime of felon in possession of a firearm based on the events that occurred on June 16, 2021. Rivera's supervised release revocation hearing was continued several times while the parties worked to resolve the felon-in-possession charge through a plea agreement.

On May 18, 2022, the district court held a combined sentencing and revocation hearing, at which it sentenced Rivera to sixty-four months' imprisonment for the June 16, 2021 felon-in-possession crime, revoked his supervised release as to the 2011 conviction, and imposed a twenty-four month revocation sentence. At the hearing, Rivera stipulated to all violations alleged in the revocation petition. Both the government and defense counsel agreed the advisory guidelines sentencing range as to the June 16, 2021 felon-in-possession

4

conviction was sixty-three to seventy-eight months; both, however, requested a combined punishment of no more than sixty months for the revocation and the new conviction.  In so agreeing, the government asserted Rivera had matured from his earlier, crime-ridden years; noted it did not believe he was recently involved in gang activity; and recognized he had been in county jail for nearly a year which was "harder time" than time in federal custody.  The government acknowledged that, while Rivera had repeatedly possessed firearms, he had suffered ongoing trauma, noting his anxiety, ADHD, depression, and that his brother had literally died in his arms.  The government recognized Rivera admitted he "always carried a gun because of his brother being murdered."  It described the circumstances of his latest June 16, 2021 arrest as "perhaps suggest[ing]" he was present in the vehicle with a companion only "to feed his methamphetamine habit, which has been ongoing for several years."  The government also noted that, although not affecting Rivera's advisory sentencing range, the June 16, 2021 instance of drug possession was a misdemeanor offense under state law.  Finally, the government acknowledged the circumstances when Rivera "eluded officers, which causes, of course, a danger to the public as well."  Ultimately, however, in the government's view, "all things considered . . . a sentence of 60 months combined on both cases in sufficient but not greater than necessary to meet the ends of sentencing."

The district court rejected the parties' recommendation and imposed a twenty-four month sentence, to run consecutive to sixty-four months' of

imprisonment on the June 16, 2021 felon-in-possession conviction. In explaining

the basis of its sentence, the court stressed the overriding need to protect the

public and deter future criminal acts:

> [I]n this case, as in every case, I consider the recommendations of the Federal Sentencing Guidelines but my ultimate sentencing determination is based on application of the statutory sentencing factors which are set out in the criminal code. Those require me, among other things, to consider the nature and circumstances of the offense.
>
> Here, the offense, of course, is the defendant is a felon in possession of a firearm. The particular circumstances weren't particularly egregious in the fact that the defendant appears not to have been using the firearm or otherwise employing it in any active way beyond having it there to support whatever activities he might have been contemplating or thinking about, but it's, nonetheless, of course, a serious offense.
>
> The seriousness itself is something I've got to consider as well, but a felon in possession, particularly against the backdrop of this defendant's criminal history, is a big deal. So I've considered that.
>
> I'm also required to consider the history and characteristics of the defendant. Here, in terms of the defendant's background and upbringing, he has some things that would incline me to be more sympathetic to him in terms of the adverse events in his childhood: The abuse from his father, the experience of his brother being killed while he was there with him.
>
> And all of that has undoubtedly contributed to an ample basis for the PTSD diagnosis that was apparently made by somebody at some point. So that cuts in the defendant's favor.
>
> . . . .
>
> The thing, of course, that is the most not helpful to the defendant that relates to the defendant's history is his criminal history.

6

It is true, I think, as defense counsel has argued, that the particular guideline calculation here -- and this comment that I'm about to make doesn't necessarily have to do with the criminal history calculation as much as the offense level adjustment -- but I do think there is some force to the argument that the particular drug offense that he committed that is the basis for the enhancement under the guidelines probably tends to overstate the seriousness of the offense because it was essentially a simple possession of a drug that would not now be the basis for a felony under state law and may at some point may not be under federal law.  So I think there is some force to that argument.

On the other hand, though, the -- the factors that do impact the criminal history category are the prior offenses.  This defendant has a string of firearms offenses that go back over 10 or 15 years, and it's a very lengthy one.

Oftentimes in these situations one of the things I take into account is if we're dealing with a guideline range that otherwise makes sense and I look at someone's criminal history category and I see that they've got a prior conviction for the very same offense, that is a factor that will often cause me to say that's a reason to sentence them at the top of the guideline range because it's not just criminal history in general but it's criminal history for doing the very thing that they're standing in front of the Court for.

Here we've not only got that, but we've got multiple prior convictions for the very same thing.  We're talking about five or six or seven of them.

I've been doing this for about 20 years, and I don't think I've seen any situation where someone appeared in front of me on a possession of a -- a felon in possession of a firearm with what appeared to be five or six or seven prior convictions for the same offense.  And it seems to me that that puts this in a whole different category than would otherwise be the case.

Part of what I'm required to take into account is the need to protect the public, the need to deter the criminal activity that the defendant has engaged in.  And what this course of conduct over many years and multiple convictions indicates to me is that there is a substantial need to protect the public from the risk of gun violence,

7

because the defendant has repeatedly had a gun although he's been repeatedly told it's not legal to have one.

The deterrent aspect of this has obviously not worked. He's received multiple sentences on various occasions, and he kept doing it time after time after time.

I fully appreciate that the defendant had a horrible experience when his brother was killed and all of that, and no doubt that may be a reason you want to be armed. But at some point since 2008, it appears to me when that happened he's had three or four or five -- I haven't attempted to calculate it exactly -- three or four or five convictions for being in possession of a firearm.

At some point it simply doesn't matter whether there was some kind of understandable reason 15 years ago for possession of a firearm when the legal system has repeatedly said it's illegal and you've got to ultimately follow the law.

So it seems to me that what we're dealing with here, in terms of the repetitive instances of a felon being in possession of a firearm, is that this is a truly egregious course of conduct over a period of -- a substantial period. And, frankly, I don't see how you can get to a 60-month sentence or a downward variance in the face of that.

. . . .

The defendant says, I've learned my lesson, I'm moving in a direction -- a different direction, and I certainly hope that is true. But against the record I'm looking at here, this defendant has had multiple opportunities to change direction over the last 15 years and he hasn't done it.

At some point he's got to do it. At some point I hope he does it. But it hasn't happened yet. And it just seems to me that against the backdrop of that repetitive conduct, the sentence of 60 months for both is not even in the ballpark. I'm a little surprised that we're even here with the government agreeing to that.

But it does seem to me that the multiple convictions that we're dealing with here, that, coupled with the fact that – and this is, I think, made more clear maybe in the supervised release context --

we're also dealing with an ongoing illegal drug use that's extended now through three terms of supervised release.

The revocations have all been on similar grounds. I don't mean to suggest that I think getting -- dealing with a drug habit is or ought to be easy. It isn't easy. There's nothing easy about it.

But, at the same time, the system has attempted, through multiple terms of supervised release, to assist the defendant in coming to grips with that, and it obviously hasn't worked up until now so that we're still getting instances like the instances in 2021 of driving under the influence, eluding officers, jeopardizing the public in multiple ways, that way that don't even involve firearms.

So there are a variety of factors here that it would seem to me lead to the conclusion that there has to be a meaningful sentence in this case and, frankly, 60 months doesn't get there.

So it's -- the result of all of that, I think -- and this is taking into account the fact that the reference to the marijuana conviction probably overstates the significance of it. It also tends to take into account the perhaps harder-than-usual time that the defendant did in Cleveland County.

But, having taken all that into account, it will be the judgment of the Court that the defendant be sentenced in [the June 16, 2021 felon-in-possession case] to a term of 64 months' imprisonment, and that his term of supervised release be revoked . . . and that he be sentenced to a term of incarceration of 24 months in that case, with the sentences to run consecutive to each other. In other words, a total sentence of 88 months.

Rivera does not challenge on appeal the sixty-four month sentence imposed

on the June 16, 2021 felon-in-possession conviction. He challenges only the

substantive reasonableness of his twenty-four month revocation sentence.[1] This

---

[1]This court notes that although Rivera does not seem to narrowly challenge the district court's decision to order the revocation sentence to run consecutively to the June 16, 2021 felon-in-possession sentence—but instead challenges the length of the revocation sentence, at least in part, based on its relationship to the

court reviews challenges to the substantive reasonableness of a sentence after revocation of supervised release for an abuse of discretion. *United States v. Williams*, 994 F.3d 1176, 1180 (10th Cir. 2021). Under this standard, this court "give[s] substantial deference to the district court and will only overturn a sentence that is arbitrary, capricious, whimsical, or manifestly unreasonable." *Id.* (quotation omitted). "[T]o win a substantive reasonableness appeal is no easy thing." *United States v. Rendon-Alamo*, 621 F.3d 1307, 1310 n.\*\* (10th Cir. 2010). "[I]n many cases there will be a range of possible outcomes the facts and law at issue can fairly support; rather than pick and choose among them . . ., [this court] will defer to the district court's judgment so long as it falls within the realm of these rationally available choices." *United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007).

In light of the district court's thoughtful analysis and balancing of those 18 U.S.C. § 3553(a) factors relevant in the revocation context, *see id.* § 3583(e), Rivera's challenges to the substantive reasonableness of his twenty-four month sentence are not weighty. Indeed, those arguments appear to be based on a desire for this court to reweigh de novo the relevant sentencing factors. *But see United*

---

felon-in-possession conviction—the district court's decision to impose the revocation sentence consecutively is consistent with the advisory Sentencing Guidelines. *See* U.S.S.G. § 7B1.3(f) ("Any term of imprisonment imposed upon the revocation of probation or supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of probation or supervised release.").

10

*States v. Smart*, 518 F.3d 800, 808 (10th Cir. 2008) (explaining this court "may not examine the weight a district court assigns to various § 3553(a) factors, and its ultimate assessment of the balance between them" but "[i]nstead, . . . must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance" (quotation and citation omitted)).

Rivera argues the district court failed to consider how his drug addiction "was the primary driver of his behavior, dismissing it as a 'drug habit,' and stating that supervised release had tried to help him 'come to grips' with it but then failing to state exactly what had been done to help him so do." Rivera's Opening Br. at 11. This assertion is not tenable. The transcript of the sentencing hearing, together with the district court's oral sentencing decision, makes clear the district court was well-aware of the impact of Rivera's drug addiction on his recidivist history. Under the particular facts of this case, however, the district court concluded that factor simply did not outweigh the need to protect the public and to deter future crimes on the part of Rivera. Indeed, the record reveals that Rivera's drug use often coincided with his illegal possession of a weapon. *See Smith v. United States*, 508 U.S. 223, 240 (1993) (recognizing that "drugs and guns are a dangerous combination"). Furthermore, the district court reasonably concluded that, even apart from the possession of firearms while in an altered state, his conduct while intoxicated—i.e., fleeing and evading arrest—rendered him even more dangerous to the public. Nor can it be credibly claimed that the district court erred in recognizing Rivera's continued addiction came in the face

11

of help afforded to supervisees.  When Rivera struggled with his addiction at the very beginning of his third attempt at supervised release, his probation officer offered to have him placed in a residential substance abuse treatment facility. Rivera rejected that offer and, instead, claimed "he would discontinue use immediately so he could support his family."  The district court decision that Rivera's history of drug addiction did not require a shorter term of incarceration is clearly reasonable.

Next, Rivera contends the district court put too much weight on the need to protect the public, when it was the government's assessment that Rivera did not have a history of gun violence.  This argument fails on several levels.  First, it is the district court, not the parties, that is to assess the relevant § 3553(a) sentencing factors.  Second, the record demonstrates the district court was well-versed in the parties' arguments and understood the United States thought leniency was warranted in this case.  Thus, the assertion the district court believed the parties' arguments were irrelevant is directly contradicted by the transcript of the sentencing hearing.  Third, the district court reasonably concluded leniency on the magnitude suggested by the parties would place the public in danger and fail to deter Rivera from committing future crimes.  In essence, the district court correctly noted, the parties were asking it to take Rivera's word that he would turn his life around.  Given the repeat nature of Rivera's illegal possession of firearms and his violations of the terms of his supervised release, the district court was entitled to give Rivera's promises little

12

credence.  Finally, as noted above, drugs and guns are a dangerous mix.  Given Rivera's history and characteristics, the district court was not required to wait for Rivera to use an illegally possessed firearm in a violent fashion before concluding a lengthy sentence was necessary to protect the public.

Lastly, Rivera complains the district court did not adequately account for the length of his sentence on the June 16, 2021, felon-in-possession sentence in choosing to impose a twenty-four month consecutive sentence upon revocation of supervised release.  Rivera Opening Br. at 11-12 ("Here, the court made no distinction between its assessment of the appropriate sentence for the felon in possession case and the revocation sentence, reflective or its failure to consider that its sentence in the new federal in possession case already accounted for the firearm possession, and already took into account Mr. Rivera's recidivist history.").  This argument is surprising given that both Rivera and the government asked the district court to impose a package sentence of sixty months' imprisonment to account for both the conviction and revocation.  That is exactly what the district court did, although it set a combined sentence twenty-eight months longer than the parties requested.  In any event, the record makes clear the district court did factor in both sentences imposed in arriving at a just and reasonable overall sentence.  *See United States v. Smith*, 756 F.3d 1179, 1183–84 (10th Cir. 2014).  The advisory sentencing range for Rivera's June 16, 2021 felon-in-possession conviction was sixty-three to seventy-eight months' imprisonment.  Based on a belief the Sentencing Guidelines overstated the

significance of Rivera's marijuana conviction and the "perhaps harder-than-usual time" Rivera spent in county jail, the district court imposed a sentence for the felon-in-possession conviction just one month above the bottom of the advisory range. Nevertheless, having concluded that an overall sentence of sixty months did not come close to adequately protecting the public or deterring future criminal conduct on the part of Rivera, the district court imposed a lengthy sentence upon revocation. Thus, in contrast to Rivera's assertion, when his revocation sentence is considered in context of his felon-in-possession sentence, the revocation sentence is all the more reasonable.

The district court's sentence is both reasoned and reasonable. Thus, the judgment entered by the United States District Court for the Western District of Oklahoma is hereby **AFFIRMED**.

Entered for the Court

Michael R. Murphy
Circuit Judge